JS 44 CAND (Rev. 12/11)

C12-2423-MEJ

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

STARLA PACINI, an individual; MARIA SANCHEZ, an individual; ALBA PENAGOS, an individual; and HECTOR PENAGOS, an individual; appearing individually and on behalf of others similarly situated

## DEFENDANTS

BANK OF AMERICA, N.A., a national bank; INTERSECTIONS INSURANCE SERVICES, INC. an Illinois corporation

**(b)** County of Residence of First Listed Plaintiff  CONTRA COSTA COUNTY

*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant  CONTRA COSTA COUNTY

*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE:    IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

KNAPP, PETERSEN & CLARKE
550 North Brand Boulevard, Suite 1500
Glendale, CA 91203
Tel: (818) 547-5000; Fax: (818) 547-5329

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

☐ 1  U.S. Government Plaintiff

☐ 2  U.S. Government Defendant

☐ 3  Federal Question
*(U.S. Government Not a Party)*

☒ 4  Diversity
*(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff)*
*(For Diversity Cases Only)* *and One Box for Defendant)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 400 State Reapportionment |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ Pharmaceutical | | | ☐ 410 Antitrust |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | Personal Injury Product Liability | | **PROPERTY RIGHTS** | ☐ 430 Banks and Banking |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 820 Copyrights | ☐ 450 Commerce |
| ☐ 151 Medicare Act | ☐ 340 Marine | | | ☐ 830 Patent | ☐ 460 Deportation |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | **LABOR** | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards Act | **SOCIAL SECURITY** | ☐ 480 Consumer Credit |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | ☐ 720 Labor/Mgmt. Relations | ☐ 861 HIA (1395ff) | ☐ 490 Cable/Sat TV |
| ☒ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | ☐ 740 Railway Labor Act | ☐ 862 Black Lung (923) ☐ 863 DIWC/DIWW (405(g)) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 195 Contract Product Liability | | ☐ 385 Property Damage Product Liability | ☐ 751 Family and Medical Leave Act | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | ☐ 362 Personal Injury - Med. Malpractice | | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| | | | ☐ 791 Empl. Ret. Inc. Security Act | | ☐ 893 Environmental Matters |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | | **FEDERAL TAX SUITS** | ☐ 895 Freedom of Information Act |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | ☐ 510 Motions to Vacate Sentence | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 896 Arbitration |
| ☐ 220 Foreclosure | ☐ 441 Voting | **Habeas Corpus:** | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 530 General | **IMMIGRATION** | | |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 535 Death Penalty | ☐ 462 Naturalization Application | | ☐ 950 Constitutionality of State Statutes |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 540 Mandamus & Other | ☐ 463 Habeas Corpus - Alien Detainee (Prisoner Petition) | | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | ☐ 550 Civil Rights ☐ 555 Prison Condition | ☐ 465 Other Immigration Actions | | |
| | ☐ 448 Education | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

☒ 1 Original Proceeding    ☐ 2 Removed from State Court    ☐ 3 Remanded from Appellate Court    ☐ 4 Reinstated or Reopened    ☐ 5 Transferred from another district *(specify)*    ☐ 6 Multidistrict Litigation

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
28 U.S.C. section 1332(a)(2).

Brief description of cause:
Fraud and unfair business practices.

## VII. REQUESTED IN COMPLAINT:

☒ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $ more than $5 million

CHECK YES only if demanded in complaint:
JURY DEMAND: ☒ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*    JUDGE _____    DOCKET NUMBER _____

## IX. DIVISIONAL ASSIGNMENT (Civil L.R. 3-2)
*(Place an "X" in One Box Only)*    ☒ SAN FRANCISCO/OAKLAND    ☐ SAN JOSE    ☐ EUREKA

**DATE**  May 10, 2012

SIGNATURE OF ATTORNEY OF RECORD    ANDRE E. JARDINI

1  André E. Jardini (State Bar No. 71335)
   aej@kpclegal.com
2  K.L. Myles (State Bar No. 243272)
   klm@kpclegal.com
3  KNAPP, PETERSEN & CLARKE
   550 North Brand Boulevard, Suite 1500
4  Glendale, California 91203-1922
   Telephone: (818) 547-5000
5  Facsimile: (818) 547-5329

6  Amir S. Salehi (State Bar Number 203193)
   amirs@lawyer.com
7  SALEHI & ASSOCIATES, P.C.
   12400 Wilshire Blvd., Suite 1300
8  Los Angeles, CA 90025
   Telephone: (310) 820-3366
9  Facsimile: (310) 820-3361

10 Attorneys for Plaintiffs
   STARLA PACINI, an individual;
11 MARIA SANCHEZ, an individual; and ALBA
   PENAGOS, an individual; appearing
12 individually and on behalf of
   others similarly situated

13

**FILED**

MAY 1 4 2012

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND

14              UNITED STATES DISTRICT COURT

15            NORTHERN DISTRICT OF CALIFORNIA              ADR

16                    OAKLAND DIVISION

17

18 STARLA PACINI, an individual; MARIA  )  No. **C12-02423**   MEJ
   SANCHEZ, an individual; ALBA         )
19 PENAGOS, an individual; and HECTOR   )
   PENAGOS, an individual; appearing    )  COMPLAINT FOR DAMAGES:
20 individually and on behalf of others )  DEMAND FOR JURY TRIAL
   similarly situated,                  )
21                                       )  CLASS ACTION
                 Plaintiffs,            )
22                                       )
           v.                            )
23                                       )
   BANK OF AMERICA, N.A., a national    )
24 bank; INTERSECTIONS INSURANCE        )
   SERVICES, INC., an Illinois corporation; )
25                                       )
                 Defendants.            )
26 _____ )

27

28

                                    -1-              Complaint/Demand for Jury Trial

KNAPP,
PETERSEN
& CLARKE

1    Plaintiffs Starla Pacini, Maria Sanchez, Alba Penagos and Hector Penagos,
2  (collectively "Plaintiffs), individually and on behalf of all others similarly situated
3  (the "Class"), bring this Class Action Complaint ("Complaint") against Defendants
4  Bank of America, N.A. ("BANA") and Intersections Insurance Services, Inc. ("IISI")
5  (collectively "Defendants"), and by and through their attorneys, allege upon personal
6  knowledge as to their own acts and jurisdictional allegations, and upon information
7  and belief based on investigation by Counsel as to other acts, as follows:

8                                    **NATURE OF THE ACTION**

9    1.    Plaintiffs bring this action on behalf of themselves and all other
10 similarly-situated customers of BANA who, without the customer's express and
11 informed written consent, were enrolled in and charged for an accidental death
12 insurance product known as "Smart Step Protector Insurance," "Level Accidental
13 Death Insurance," "Level AD" or other similar monikers ("Smart-Step").

14    2.    BANA is one of the world's largest financial institutions, serving over
15 33 million consumer relationships with 5,700 retail banking offices and more than
16 16,000 ATMs.

17    3.    IISI, a fully-owned subsidiary of Intersections, Inc., offers a variety of
18 products, including access to professional financial and legal information, and life,
19 accidental death and disability insurance. IISI principally offers its products to
20 consumers on a monthly subscription basis. Subscription fees are generally billed
21 directly to the subscriber's credit card, mortgage bill or demand deposit account.

22    4.    Defendants market Smart-Step exclusively through a common and
23 uniform telemarketing scheme. Using a standardized script, Defendants'
24 telemarketers solicit BANA customers and offer Smart-Step for a trial period during
25 which time the product is made available at no cost to the customer.

26    5.    The problem with Defendants' business model is that, among other
27 things alleged herein: (a) Defendants do not disclose that, unlike a traditional
28 telemarketer, Defendants possess information that enables Defendants to charge a

KNAPP,
PETERSEN
& CLARKE

-2-                          Complaint/Demand for Jury Trial

1  consumer's account without obtaining the account number directly from the
2  consumer during the particular transaction in which the purchase occurs; and (b)
3  Defendants fail to disclose clearly and conspicuously that Smart-Step is offered using
4  a free-to-pay conversion and negative option feature.

5      6.      Consumers rely on the process of providing a credit card number or a
6  debit card number as a barrier to unexpected charges. Indeed, not providing one's
7  debit card or credit card number to a telemarketer is a commonly understood and
8  accepted way to prevent an unwanted purchase of goods and services. However,
9  Defendants' scheme unfairly and misleadingly is designed to allow Defendants to
10 cause a consumer's billing information to be submitted for payment even where the
11 consumer has not provided his or her account information to the telemarketer.

12     7.      The free-to-pay conversion and negative option features of Defendants'
13 Smart-Step offer require a consumer to take affirmative action – to call the Smart-
14 Step plan administrator – prior to the expiration of a 30-day free trial to cancel his or
15 her enrollment in Smart-Step to avoid being charged. However, as a result of
16 Defendants' uniform fraudulent, unfair and unlawful marketing practices, including
17 the misleading representations and material omissions alleged herein, Plaintiffs and
18 the Class were deceived, and reasonable consumers are likely to be deceived, into
19 believing they must act affirmatively after the telemarketing call to enroll in Smart-
20 Step, rather than to cancel their enrollment in a recurring payment plan.

21     8.      Consumers who do nothing after Defendants' short uniform
22 telemarketing solicitation are involuntarily enrolled in Smart-Step and charged a
23 monthly premium, customarily in the amount of $20, without their express, informed
24 written authorization.

25     9.      Monthly charges in the name of Smart-Step are levied against
26 consumers' checking accounts using recurring electronic fund transfers ("EFT")
27 without the consumers' informed and express authorization, written or otherwise.
28 Similarly, credit card accounts are debited by automatic recurring charges. As to

KNAPP,
PETERSEN
& CLARKE

-3-                    Complaint/Demand for Jury Trial

1  BANA's residential mortgage loan customers, on information and belief, monthly
2  charges for Smart-Step are added to the customer's monthly payment without the
3  customers' informed and express authorization, written or otherwise.

4      10.  The EFT process allows Defendants to take funds from a consumer's
5  checking account without the consumer's active participation in effectuating
6  payment. Under the law, a consumer must provide written authorization for an
7  automatic EFT. Defendants fail to obtain any written authorization from Plaintiffs
8  and the Class prior to initiating EFTs from their checking accounts on or before
9  assessing recurring charges to credit card accounts, and/or prior to adding a charge
10  for Smart-Step to their residential mortgage loan payment. Defendants' failure to do
11  so constitutes an unfair, unlawful and fraudulent business act or practice under
12  California law.

13      11.  Additionally, these unauthorized EFTs for Smart-Step often result in
14  members of the Class incurring overdraft fees on their checking account, and/or
15  over-limit and/or late fees on their credit cards.

16      12.  Defendants' uniform scheme also constitutes abusive and deceptive
17  telemarketing acts or practices in violation of the Federal Trade Commission's
18  Telemarketing Sales Rule ("TSR"), 16 C.F.R. Part 310. The same uniform conduct
19  that constitutes violations of the TSR also constitutes unfair, unlawful and fraudulent
20  business acts or practices under California law.

21      13.  The uniform deceptive and misleading manner in which Defendants
22  offer for sale and sell Smart-Step is designed so that thousands of California
23  consumers pay premiums month after month for a product that is effectively
24  worthless and about which the consumers have no knowledge unless and until they
25  discover the automatic EFT transaction on their checking account or credit card
26  account statement, or the line-item report on their residential mortgage statement.

27      14.  Defendants have exacerbated their fraudulent and deceptive practices by
28  claiming that Plaintiffs and Class members voluntarily enrolled in Smart-Step,

KNAPP,
PETERSEN
& CLARKE

-4-                    Complaint/Demand for Jury Trial

1462406.1  08000/00950

1  attempting to convince consumers through deceptive marketing that they should stay
2  "enrolled" in Smart-Step instead of canceling the program, and refusing to refund the
3  money of customers who were charged without their informed and express
4  authorization, written or otherwise.

5       15.    Defendants violated California law by charging customers for Smart-
6  Step who did not provide their express, informed consent, written or otherwise, to be
7  charged; by the unfair, deceptive, and misleading manner in which Defendants
8  enrolled consumers in, and charged consumers for, Smart-Step through
9  misrepresentations and material omissions without their consent or knowledge; and
10  by Defendants' subsequent refusal to refund money to customers who Defendants
11  charged for Smart-Step.

12      16.    As a result of their fraudulent, unlawful and unfair marketing practices
13  in connection with sales of Smart-Step, Defendants have increased their profits due
14  to a product that provides virtually no benefits to California residents who are
15  nevertheless charged for the product month in and month out.  On information and
16  belief, Smart-Step is a significant profit center for both IISI and BANA.

17      17.    Defendants' practices have caused substantial and significant harm to
18  consumers.  Defendants charge consumers a premium in the amount of $20 for
19  individual coverage and $40 for joint coverage.  Upon information and belief, during
20  the Class period, Defendants collected in excess of $500,000,000 in premiums for
21  Smart-Step from BANA checking and credit card customers throughout the United
22  States.  Additional premiums in an amount readily ascertainable from Defendants'
23  records were collected from BANA mortgage customers.

24      18.    Plaintiffs, on behalf of themselves and the Class, therefore, bring this
25  class action against BANA and IISI (collectively "Defendants") for fraud based on
26  concealment, and violations of the Racketeer Influenced and Corrupt Organizations
27  Act, 18 U.S.C. § 1962 (a, b, c, d) ("RICO"), and California's Unfair Competition
28  Law, Cal. Bus. & Prof. Code § 17200 et seq. ("UCL" or " Section 17200").

KNAPP,
PETERSEN
& CLARKE

-5-                                    Complaint/Demand for Jury Trial

1 Plaintiffs seek damages and equitable relief on behalf of themselves and the Class,
2 which relief includes, but is not limited to, full refunds for Plaintiffs and Class
3 members, compensatory and punitive damages, an order enjoining Defendants from
4 continuing to engage in fraudulent, unlawful and unfair business acts and practices in
5 connection with the offer for sale and/or sale of Smart-Step, as well as Plaintiffs'
6 reasonable attorneys' fees and expert fees, and any additional relief that this Court
7 determines to be necessary or appropriate to provide complete relief to Plaintiffs and
8 the Class.

9 ## JURISDICTION AND VENUE

10 19. This Court has jurisdiction over this matter pursuant to the Racketeer
11 Influenced and Corrupt Organizations Act, 18 U.S.C. § 1962; and the Class Action
12 Fairness Act, 28 U.S.C. § 1332(d)(2). The matter in controversy, upon information
13 and belief, exceeds $5,000,000, exclusive of interests and costs, there are at least 100
14 members of the proposed Class, and at least one member of the Class is a citizen of a
15 different state than Defendants. In addition, this Court has supplemental jurisdiction
16 over the state law claims asserted herein pursuant to 28 U.S.C. § 1367.

17 20. This Court has personal jurisdiction over BANA and IISI because they
18 are authorized to do business and have conducted business in California, they have
19 specifically marketed, offered for sale and sold Smart-Step in California, they have
20 sufficient minimum contacts with this State, and/or sufficiently avail themselves to
21 the markets of this State through their promotion, sales and marketing within this
22 State to render the exercise of jurisdiction by this Court permissible.

23 21. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because a
24 substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in
25 this District.

26 22. The Oakland Division of the Northern District of California is an
27 appropriate venue because Plaintiff Starla Pacini resides in the City of Pittsburgh,
28 California.

KNAPP,
PETERSEN
& CLARKE

-6-

Complaint/Demand for Jury Trial

1

## PARTIES

2      23.     Plaintiff Starla Pacini ("Pacini") is citizen of the State of California
3  residing in the City of Pittsburg. Defendants deceptively marketed Smart-Step to
4  Plaintiff Pacini through misrepresentations and material omissions and charged her
5  BANA credit card account for Smart-Step premiums without her express, informed
6  authorization, written or otherwise.

7      24.     Plaintiff Maria Sanchez ("Sanchez") is a citizen of the State of
8  California residing in the City of Los Angeles. Defendants deceptively marketed
9  Smart-Step to Plaintiff Sanchez through misrepresentations and material omissions
10  and electronically debited her BANA checking account for Smart-Step premiums
11  without her express, informed authorization, written or otherwise.

12      25.     Plaintiff Alba Penagos is a citizen of the State of Virginia, residing in
13  the City of Moneta. Defendants deceptively marketed Smart-Step to Plaintiff Alba
14  Penagos through misrepresentations and material omissions and electronically
15  debited her BANA checking account for Smart-Step premiums without her express,
16  informed authorization, written or otherwise.

17      26.     Plaintiff Hector Penagos is a citizen of the State of Virginia, residing in
18  the City of Moneta. Defendants deceptively marketed Smart-Step to Plaintiff Hector
19  Penagos through misrepresentations and material omissions and electronically
20  debited his BANA checking account for Smart-Step premiums without his express,
21  informed authorization, written or otherwise.

22      27.     Upon information and belief, Defendant BANA is a nationally-chartered
23  bank, regulated by the Office of the Comptroller of the Currency, with its principal
24  place of business in North Carolina.

25      28.     Upon information and belief, Defendant IISI is a corporation
26  incorporated under the laws of the State of Illinois with its principal place of business
27  in Illinois. IISI previously did business as "Chartered Marketing Services, Inc." and
28  "Chartered Benefit Services, Inc."

KNAPP,
PETERSEN
& CLARKE

-7-                    Complaint/Demand for Jury Trial

1462406.1  08000/00950

## THE DEFENDANTS' JOINT LIABILITY

29. At all times relevant, Defendants aided and abetted, encouraged and rendered substantial assistance to each other in perpetuating the scheme fraudulently, unlawfully and unfairly to enroll consumers in Smart-Step, including Plaintiffs and Class members.

30. Defendants are and were acting as the agent, servant, employee, joint venturer, and representative of, and with the knowledge, consent and permission of, and in conspiracy with each other and within the course, scope and authority of that agency, service, employment, representation, joint venture and conspiracy. Defendants' conduct was fully ratified by the other. The actions, failures to act, and breaches alleged herein were approved, ratified and done with the cooperation and knowledge of both Defendants.

31. Further, Defendants conspired to profit from the unauthorized charges to consumers for Smart-Step. Pursuant to this conspiracy, Defendants, their agents, servants, and employees, acting both jointly and severally, committed or caused to be committed a series of unlawful acts, namely: making, or causing to be made, unauthorized changes to consumers' checking accounts, credit card accounts and/or residential mortgage loan payments. These acts were made in furtherance of the conspiracy.

32. The respective acts of each individual Defendant may be alleged with particularity following discovery of the written agreements which are known to have been entered into between BANA and IISI.

33. Defendants are jointly liable for the violations alleged herein.

////
////
////
////
////

KNAPP,
PETERSEN
& CLARKE

Complaint/Demand for Jury Trial

1462406.1  08000/00950

1 **FACTUAL ALLEGATIONS**

2 **A. Defendants' Scheme Is Designed To Enroll Consumers In Smart-Step**

3 **Without A Consumer's Express Informed Consent Or Written**

4 **Authorization To Be Charged.**

5 34. Since at least January 2006, Defendants have engaged in an aggressive

6 and uniform scheme to market, offer for sale, sell and administer Smart-Step to credit

7 card and checking account customers of BANA.

8 35. On information and belief, during the same time period, Defendants

9 engaged in the same aggressive and uniform scheme to market, offer for sale, sell

10 and administer Smart-Step to residential mortgage customers of BANA.

11 36. On information and belief, in or around January 2006, BANA, IISI

12 (formerly doing business as Chartered Marketing Services, Inc.) and National Union

13 Fire Insurance Company of Pittsburgh, PA ("National Union") entered into an

14 agreement pursuant to which Defendants jointly market and sell Smart-Step to

15 BANA customers (the "Smart-Step Marketing Agreement").

16 37. Defendants charge consumers a premium in the amount of $20 for

17 individual accidental death coverage of the BANA customer in the amount of

18 $100,000, and a premium in the amount of $40 for joint coverage of the BANA

19 customer and the customer's spouse.

20 38. Upon information and belief, Defendants collected in excess of

21 $500,000,000 in premiums for Smart-Step from BANA credit card and checking

22 account customers throughout the United States during the Class period. At least

23 150,000 BANA credit card and checking account customers residing in California

24 were actively enrolled in Smart-Step. In addition, Defendants marketed Smart-Step

25 to BANA mortgage customers. The total number of mortgage customers enrolled in

26 Smart-Step without their informed consent, and the total amount of premiums

27 unwittingly paid by such customers, can be ascertained from Defendants' records.

28 ////

KNAPP,
PETERSEN
& CLARKE

Complaint/Demand for Jury Trial

1462406.1  08000/00950

1    39.    Upon information and belief, Defendants collected in excess of
2  $20,000,000 in premiums for Smart-Step from BANA credit card and checking
3  account customers residing in California during the Class period. At least 6,000
4  BANA credit card and checking account customers residing in California were
5  actively enrolled in Smart-Step during any given year of the Class period.

6    40.    Defendants promote, market, offer for sale and sell Smart-Step
7  exclusively through a common and uniform telemarketing campaign. Through high
8  pressure sales tactics, promises to help in times of need, and misrepresentations and
9  material omissions, Defendants uniformly solicit consumers to purchase Smart-Step.

10    41.    Upon information and belief, although BANA contracted with a third-
11  party telemarketing vendor for the purpose of enrolling BANA customers in Smart-
12  Step, IISI was responsible for managing and coordinating all of BANA's sales
13  activities relating to Smart-Step. Accordingly, both BANA and IISI are jointly and
14  severally liable for the actions and omissions of the telemarketing vendors engaged
15  by BANA.

16    42.    From January 2006 until August 2009, Defendants deceptively,
17  fraudulently and unfairly offered a worthless "30 days of free insurance" to induce
18  consumers to sign up for Smart-Step, which offer was designed solely to induce
19  acceptance of Smart-Step with the intent that the consumer would not appreciate his
20  or her account would be charged for Smart-Step and that affirmative steps would
21  need to be taken to avoid being such charges.

22    43.    This practice is directly violative of California Insurance Code § 771.1.

23    44.    After August 2009, and similarly, Defendants deceptively, fraudulently
24  and unfairly offered a worthless "30 days review period" to induce consumers to sign
25  up for Smart-Step, which offer was designed solely to induce acceptance of Smart-
26  Step with the intent that the consumer would not appreciate his or her account would
27  be charged for Smart-Step and that affirmative steps would need to be taken to avoid
28  being such charges.

KNAPP,
PETERSEN
& CLARKE

-10-                Complaint/Demand for Jury Trial

1     45.    Defendants violated California law in devising a telemarketing scheme
2  in which accidental death insurance is unlawfully sold and/or transacted by
3  telemarketers who are not licensed to sell insurance in the State of California. Only
4  after a sale is made is the consumer transferred to a licensed insurance agent who
5  simply confirms and audio records the confirmation of the prior sale.

6     46.    Although Smart-Step is offered presumably to protect the consumer's
7  family in the future with statements such as "you can rest easy knowing your family
8  will have one less thing to worry about at a most difficult time" and "you have made
9  a wise decision to help protect [your] family," on information and belief, Defendants
10  offer Smart-Step to all customers including those who are single and have no
11  immediate family.

12     47.    Defendants do not request that consumers designate a beneficiary during
13  the telemarketing solicitation or in the written materials sent to consumers following
14  the telemarketing solicitation. Because consumers and their family members do not
15  know the consumer has been enrolled in Smart-Step, the consumers and their family
16  members are not able to submit a claim even where the consumer has died from a
17  covered accident, thereby rendering the supposed accidental death policy utterly
18  worthless.

19     48.    Furthermore, no policy is ever delivered to the consumer. An
20  abbreviated general description of the policy is delivered in a thin BANA envelope
21  that is designed to look like junk mail.

22     49.    The policy has had an onerous undisclosed provision that any benefits
23  are forfeited unless a claim is made "within 20 days after the occurrence or
24  commencement." The terms "occurrence" or "commencement" are not defined and
25  confusingly could refer either to the accident or the subsequent death, which could
26  occur more than 20 days following an accident. Insurance industry norms for
27  accidental death insurance policies typically require that notice of a claim be made
28  "within 20 days after the occurrence or commencement, or as soon as reasonably

KNAPP,
PETERSEN
& CLARKE

-11-           Complaint/Demand for Jury Trial

1  practicable," thereby recognizing that filing notice of a claim within 20 days is
2  oftentimes not possible or practicable.

3  **B.** **Defendants' Telemarketers' Obfuscatory Language and Material**
4  **Omissions.**

5      50.    In connection with their promotion, offering for sale and sale of Smart-
6  Step, Defendants' telemarketers use a uniform telemarketing script.

7      51.    On information and belief, IISI provides the telemarketing script to
8  Defendants' telemarketers and requires that all calls precisely track the language in
9  the telemarketing script.

10     52.    To induce consumers to purchase Smart-Step, Defendants' unlicensed
11 telemarketing representatives call Class members at their homes and use highly
12 deceptive and misleading language to introduce Smart-Step to Class members. The
13 precise representations and omissions used by Defendants' unlicensed telemarketing
14 representatives during their telephone solicitations to Class members, including
15 Plaintiffs Pacini, Sanchez, Alba Penagos and Hector Penagos, can be readily
16 ascertained through discovery of Defendants' records, including the telemarketing
17 script and the audio recordings of the telemarketing solicitations made to Plaintiffs.

18     53.    The dates on which Defendants' unlicensed and licensed telemarketing
19 representatives telephoned Class members, including Plaintiffs Pacini, Sanchez, Alba
20 Penagos and Hector Penagos, can be readily ascertained through discovery of
21 Defendants' records.

22     54.    To further induce consumers to purchase Smart-Step, Defendants'
23 unlicensed telemarketing representative transfers the consumer to a licensed
24 telemarketing agent who makes additional deceptive and misleading representations
25 to Class members. The precise representations and omissions used by Defendants'
26 licensed telemarketing representatives during their telephone solicitations to Class
27 members, including Plaintiffs Pacini, Sanchez, Alba Penagos and Hector Penagos,
28 can be readily ascertained through discovery of Defendants' records, including the

KNAPP,
PETERSEN
& CLARKE

Complaint/Demand for Jury Trial

1 telemarketing script and the audio recordings of the telemarketing solicitations made
2 to Plaintiffs.

3       55.   The names of Defendants' unlicensed and licensed telemarketing
4 representatives who telephoned Class members, including Plaintiffs Pacini, Sanchez,
5 Alba Penagos and Hector Penagos, can be readily ascertained through discovery of
6 Defendants' records.

7       56.   Defendants' sales scheme is fraudulent, unlawful and unfair because,
8 among other things Defendants' telemarketers fail to disclose the following material
9 facts to the consumer, among others:

10       a.   Defendants' telemarketers fail to disclose that Defendants possess
11 information that enables Defendants to charge a consumer's account without
12 obtaining the account number directly from the consumer during the particular
13 transaction in which the purchase occurs (the "preacquired account information").

14       b.   Defendants' telemarketers fail to request that Plaintiffs and Class
15 members expressly provide to the telemarketer the last four (4) digits, or any portion,
16 of the account number on which the consumer will be charged for Smart-Step.

17       c.   Defendants' telemarketers fail to disclose clearly and
18 conspicuously the free-to-pay conversion and negative option features of the Smart-
19 Step offer.

20       d.   Defendants' telemarketers fail to disclose that BANA is making
21 the consumer's preacquired account information available to IISI and National Union
22 Fire Insurance Company of Pittsburgh, PA.

23       e.   Defendants' telemarketers fail to disclose the relationship among
24 the Defendants and between the telemarketers and the Defendants necessary to
25 understand the nature and complexity of the transaction to which Plaintiffs and Class
26 members were being solicited.

27       f.   Defendants' telemarketers fail to disclose that they are
28 telemarketers hired by BANA and directed by IISI and instead misleadingly

KNAPP,
PETERSEN
& CLARKE

-13-         Complaint/Demand for Jury Trial

1462406.1 08000/00950

1  represent they are representatives of BANA.

2         g.    Defendants fail to disclose that the Smart-Step Insurance policies
3  are not traditional term life insurance policies.

4         h.    Defendants' telemarketers fail to disclose that Defendants have an
5  official "no refund" policy.

6         i.    Defendants' telemarketers fail to disclose that, if enrolled in
7  Smart-Step, the consumer will never receive any bill or invoice from Defendants.

8         j.    Defendants' telemarketers fail to disclose that neither Smart-Step,
9  IISI nor National Union has any Internet website where a consumer can obtain
10  information about his or her policy.

11         k.    Defendants' telemarketers fail to disclose during the
12  telemarketing solicitation that the consumer should write down the telephone number
13  of the Plan Administrator for the purpose of calling to cancel during the 30-day free
14  and/or no-cost review period.

15         l.    Defendants' telemarketers fail to disclose or explain basic
16  information that was essential to understand the nature of the Smart-Step insurance
17  product.

18         m.    Defendants fail to disclose requirements for filing a claim under
19  Smart-Step. Specifically, Defendants' telemarketers fail to disclose that Defendants
20  require that "Notice of claim must be given to the Company within 20 days after the
21  occurrence or commencement" rather than the more reasonable and humane notice
22  requirement of other accidental death insurance policies that allow notice of a claim
23  to be "given within 20 days after the occurrence or commencement, or as soon as
24  reasonably practicable."

25         n.    Defendants fail to disclose the limitations and exclusions to
26  coverage under the policy.

27         o.    Defendants fail to disclose the master policy terms.

28  ////

KNAPP,
PETERSEN
& CLARKE

-14-          Complaint/Demand for Jury Trial

1    p.    Defendants fail to disclose the fact that the insurer has the right to
2  terminate the insurance.

3    q.    Defendants fail to disclose the fact that the policy does not
4  provide coverage beyond age 70, provides only half coverage after age 70 and/or
5  provides no coverage after 85.

6    r.    Defendants fail to disclose that in states where defendants used
7  unlicensed telemarketers instead of licensed insurance brokers or agents, like
8  California, that those unlicensed persons could not legally quote benefits or costs,
9  describe policy terms or be paid on a commission basis, as they did.

10    s.    Defendant did not disclose that an inadequate "fulfillment
11  package" of written materials would be sent disguised as junk mail.

12    t.    Defendants did not disclose how to designate a beneficiary.

13    u.    Defendants did not disclose when the policy term would begin.

14    v.    Defendants did not disclose that the non-insurance part of the
15  Smart-Step (i.e. the Nurse Helpline) subjected them to EFT rules, without any
16  exception, requiring written authorization for the withdrawal of funds.

17    w.    Defendants did not reveal that they were in violation of the
18  telemarketing rules in failing to record the entire transaction with account holders.

19    x.    Defendants did not reveal that the cost for joint coverage at twice
20  the rate for single coverage was well beyond the fair cost of that coverage given the
21  efficiencies in selling a second coverage to the same customer.

22    y.    Defendants did not disclose that the Smart-Step scheme deprived
23  account holders of protections and notices used previously by defendants in the sale
24  of similar products.

25    57.    The aforementioned material omissions would have a probable and
26  reasonable influence on a prospective consumer's estimation of the disadvantages of
27  Smart-Step and thus constitute a violation of an insurer's duty to disclose under
28  California Insurance Code Section 332.

KNAPP,
PETERSEN
& CLARKE

-15-                    Complaint/Demand for Jury Trial

1     58.    As a result of Defendants not providing Plaintiffs and Class members
2   with an opportunity to name a beneficiary on the purported policy, it was rendered
3   worthless.

4     59.    At no time did Defendants' telemarketers obtain the name of a
5   beneficiary from Plaintiffs Pacini, Sanchez, Alba Penagos and Hector Penagos.

6   **C.    Defendants' Telemarketers' Use of Complex, Confusing Language Is**
7        **Designed To Deceive A Reasonable Consumer Regarding The Free-To-**
8        **Pay Conversion And Negative Option Feature.**

9     60.    The telemarketing script used by Defendants contains complicated,
10  confusing language that is likely to deceive a reasonable consumer into believing that
11  he or she need not act affirmatively after the telemarketing call to cancel his or her
12  enrollment in Smart-Step, and is fundamentally unfair and fraudulent under
13  California law.

14    61.    Defendants' telemarketers intentionally and misleadingly use long,
15  convoluted, complicated sentences to disclose and/or describe the free-to-pay and
16  negative option features of the Smart-Step offer for the purpose of concealing and/or
17  suppressing those features from consumers.

18    62.    In this regard, the Flesch Reading Ease ("FRE") Score indicates on a
19  scale of 0 to 100 the difficulty of comprehending a document. A score of 100
20  indicates an extremely simple document, while a score of 0 would describe a very
21  complex document. A Flesch Reading Ease Score in the range of 40–50 would
22  correspond to a relatively complex document that might score a 12 as its Flesch-
23  Kincaid Grade Level. The Flesch Reading Ease Score is calculated by using the
24  following equation: Flesch Reading Ease = 206.835 - (1.015 × Average Sentence
25  Length) - 84.6 × Average Syllables per Word.

26    63.    The Flesch-Kincaid Grade Level is an index that gives the years of
27  education required to comprehend a document. For example, a document with a
28  Flesch-Kincaid Grade Level score of 10 would require that a reader have about 10

KNAPP,
PETERSEN
& CLARKE

-16-                    Complaint/Demand for Jury Trial

1462406.1  08000/00950

1 years (or a 10th grade level) of education to comprehend the document. It can be
2 calculated using the following equation: Flesh-Kincaid Grade Level = (0.39 ×
3 Average Sentence Length) + (11.8 × Average Syllables per Word) - 15.59.

4     64.    In linguistics, the Gunning fog index measures the readability of English
5 writing. The index estimates the years of formal education needed to understand the
6 text on a first reading. A fog index of 12 requires the reading level of a U.S. high
7 school senior (around 18 years old). The fog index is commonly used to confirm that
8 text can be read easily by the intended audience. Texts for a wide audience generally
9 need a fog index less than 12. Texts requiring near-universal understanding
10 generally need an index less than 8. The Grunning fox index scores alleged herein
11 were calculated using an Internet-based calculator found at http://gunning-fog-
12 index.com (last visited on January 30, 2012).

13     65.    The language in the telemarketing script used by Defendants'
14 telemarketers, as well as the language used in the telemarketing solicitations made to
15 Plaintiffs, scores as exceedingly complex on the Flesch Reading Ease Score, the
16 Flesh-Kincaid Grade Level and the Grunning fox index.

17     66.    In addition to Defendants' intentional use of lengthy, complicated
18 sentence structure and word choice, and Defendants' use of the conditional, future
19 tense -- e.g., "can be," "would still be" and "would be" -- is misleading, unfair and
20 fraudulent because that construction indicates that customers will not be charged for
21 Smart-Step unless the customer takes some action in the future. The opposite is true,
22 however. The premiums will be automatically debited from customer's accounts
23 unless the customer takes the affirmative step of cancelling his or her enrollment in
24 Smart-Step.

25     67.    Defendants' telemarketers also make misleading, unfair and fraudulent
26 claims repeatedly throughout the telephone solicitation that consumers will not be
27 charged and that they can review Smart-Step without incurring any cost.
28 ////

**KNAPP,**
**PETERSEN**
**& CLARKE**

-17-           Complaint/Demand for Jury Trial

1  **D.    Defendants' Common Scheme Violates the Telemarketing Sales Rule.**

2       68.    In the Telemarketing Act, 15 U.S.C. § 6101, et seq., Congress directed
3  the Federal Trade Commission ("FTC") to prescribe rules prohibiting deceptive and
4  abusive telemarketing acts or practices. On August 16, 1995, the Commission
5  promulgated the original Telemarketing Sales Rule ("TSR"), with a Statement of
6  Basis and Purpose, 60 Fed. Reg. 43842 (August 23, 1995). The TSR became
7  effective on December 31, 1995, and, since then, although amended, has remained in
8  full force and effect.

9       69.    Defendants are "seller(s)" or "telemarketer(s)" engaged in
10 "telemarketing" as those terms are defined in the TSR. 16 C.F.R. §§ 310.2(aa), (cc).

11      70.    Under the TSR, "preacquired account information" means any
12 information that enables a seller or telemarketer to cause a charge to be placed
13 against a customer's or donor's account without obtaining the account number
14 directly from the customer or donor during the telemarketing transaction pursuant to
15 which the account will be charged." 16 C.F.R. § 310.2(x). Defendants' telemarketer
16 representatives possessed "preacquired account information," as defined by the TSR.

17      71.    The TSR defines "free-to-pay conversion" as a provision of an offer or
18 agreement "under which a customer receives a product or service for free for an
19 initial period and will incur an obligation to pay for the product or service if he or she
20 does not take affirmative action to cancel before the end of the trial period." 16
21 C.F.R. § 310.2(p).

22      72.    Defendants offer Smart-Step as a part of a free trial that results in
23 automatic EFTs from the checking account or credit card account of consumers if
24 they do not act within the trial period, which purportedly last 30 days. Therefore,
25 Defendants' offer of Smart-Step involves a "free-to-pay conversion," as defined by
26 the TSR.

27      73.    The TSR defines "negative option feature" as a provision in an offer or
28 agreement to sell or provide any goods or services, under which the customer's

KNAPP,
PETERSEN
& CLARKE

1 silence or failure to take an affirmative action to reject goods or services or to cancel
2 the agreement is interpreted by the seller as acceptance of the offer. 16 C.F.R. §
3 310.2(u).

4     74.    Defendants offer Smart-Step with a provision under which customers'
5 silence or failure to take affirmative action to reject the services or to cancel the
6 agreement is interpreted by Defendants as acceptance of their offer. Therefore,
7 Defendants' offer involves a "negative option feature," as defined by the TSR.

8     75.    The TSR prohibits sellers and telemarketers from "failing to disclose
9 truthfully, in a clear and conspicuous manner . . . before a customer pays for goods
10 and services offered . . . [i]f the offer includes a negative option feature, all material
11 terms and conditions of the negative option feature including, but not limited to, the
12 fact that the customer's account will be charged unless the customer takes an
13 affirmative action to avoid the charge(s), the date(s) the charge(s) will be submitted
14 for payment, and the specific steps the customer must take to avoid the charges." 16
15 C.F.R. § 310.3(a)(1)(vii).

16     76.    In any telemarketing transaction involving preacquired account
17 information and a free-to-pay conversion feature, the TSR requires that sellers and
18 telemarketers obtain the customer's "express informed consent" by:

19     a.    Obtaining from the customer at least the last four digits of the
20 account number to be charged;

21     b.    Obtaining the customer's express agreement to be charged for
22 goods and services using that account number; and

23     c.    Making and maintaining an audio recording of the entire
24 telemarketing transaction. 16 C.F.R. § 310.4(a)(7)(i).

25     **1.**    **Failure To Disclose Negative Option Clearly And Conspicuously.**

26     77.    Defendants, through their third party telemarketers, have failed to
27 disclose truthfully, in a clear and conspicuous manner, before consumers pay for the
28 services offered, all material terms and conditions of the negative option feature of

KNAPP,
PETERSEN
& CLARKE

-19-        Complaint/Demand for Jury Trial

1 their offer, including, but not limited to:

2          a.     The fact that the customers will be charged unless they take an
3 affirmative action to avoid the charges;

4          b.     The date(s) the premiums will be debited by EFT from their
5 checking account or credit card account; and

6          c.     The specific steps the customers must take to avoid the charge(s).

7     78.     Therefore, Defendants' acts and practices as set forth herein violate the
8 TSR. 16 C.F.R. § 310.3(a)(1)(vii).

9     **2.     Failure To Obtain Express Informed Consent.**

10    79.     Although Defendants' enrollment of Plaintiffs and Class members in
11 Smart-Step involved "preacquired account information" and a "free-to-pay
12 conversion," as those terms are defined in the TSR, Defendants did not:

13          a.     Obtain from the customer at least the last four digits of the
14 account number to be charged;

15          b.     Obtain the customer's express agreement to be charged for the
16 services using the account number;

17          c.     Make and maintain an oral recording of the entire telemarketing
18 transaction.

19    80.     Therefore, Defendants' acts and practices as set forth herein violate the
20 TSR. 16 C.F.R. § 310.4 (a)(7)(i).

21    **3.     The Uniform Conduct That Constitutes Defendants' Violations of**
22          **the TSR Also Constitutes Unfair, Unlawful and Fraudulent**
23          **Business Acts or Practices in Violation of California Law.**

24    81.     Pursuant to Section 3(c) of the Telemarketing Act, 15 U.S.C. § 6102(c),
25 and Section 18(d)(3) of the FTC Act, 15 U.S.C. § 57a(d)(3), violations of the TSR
26 constitute unfair or deceptive acts or practices, in or affecting commerce, in violation
27 of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

28 ////

KNAPP,
PETERSEN
& CLARKE

1    82.    The uniform conduct that constitutes Defendants' violations of the TSR

2  also constitutes unfair, unlawful and fraudulent business acts or practices under

3  California law.

4  **E.    Defendants' Common Scheme Violates the Electronic Funds Transfer**

5      **Act.**

6    83.    The Electronic Funds Transfer Act ("EFTA") provides a basic

7  framework establishing the rights, liabilities and responsibilities of participants in an

8  electronic funds transfer system. 15 U.S.C. § 1693(b). The primary objective of the

9  EFTA "is the provision of individual consumer rights." *Id*.

10    84.    Plaintiffs and Class members maintained an "account" as that term is

11  defined in 15 U.S.C. § 1693a(2), and are "consumers" as that term is defined in 15

12  U.S.C. § 1693a(5).

13    85.    Defendants engaged in "unauthorized electronic funds transfers," as that

14  term is defined in 15 U.S.C. § 1693a(11), by debiting the bank accounts or credit

15  card accounts of Plaintiffs and Class members without express written authorization.

16    86.    The EFTA provides that "[a] preauthorized electronic fund transfer from

17  a consumer's account may be authorized by the consumer only in writing, and a copy

18  of such authorization shall be provided to the consumer when made." 15 U.S.C. §

19  1693e(a) (emphasis added).

20    87.    The EFTA's implementing regulations, known as Regulation E and

21  codified at 12 C.F.R. §§ 205 et seq., provide: "Preauthorization electronic fund

22  transfers from a consumer's account may be authorized only by a writing signed or

23  similarly authenticated by the consumer. The person that obtains the authorization

24  shall provide a copy to the consumer." 12 C.F.R. § 205.10(b).

25    88.    According to the Official Staff Interpretations of Regulation E, the

26  EFTA's requirement that electronic fund transfers "be authorized by the consumer

27  'only in writing' cannot be met by a payee's signing a written authorization on the

28  consumer's behalf with only an oral authorization from the consumer." Regulation

KNAPP,
PETERSEN
& CLARKE

-21-                    Complaint/Demand for Jury Trial

1462406.1  08000/00950

1  E, Supp. I, Part 10(b), ¶ 3 (emphasis added).  When "a third-party payee fails to
2  obtain the authorization in writing or fails to give a copy to the consumer . . . , it is
3  the third-party payee that is in violation of the regulation." *Id.* at ¶ 2.

4      89.  Defendants violated the EFTA because they initiated electronic fund
5  transfers from the checking accounts of Plaintiffs and Class members without
6  obtaining prior written authorization of Plaintiffs and Class members.  15 U.S.C. §
7  1693e(a).

8      90.  Defendants also violated the EFTA because it initiated electronic fund
9  transfers from the checking accounts of Plaintiffs and Class members without
10  providing copies of their written authorization to Plaintiffs and Class members.  15
11  U.S.C. § 1693e(a); 12 C.F.R. § 205.10(b).

12      91.  As to the thousands of California consumers currently enrolled in
13  Smart-Step, Defendants' violations of the EFTA are on-going.

14  **F.**  **Defendants' Fulfillment/Welcome Package Does Not Disclose The**
15      **Negative Option, Does Not Advise Consumers They Can Cancel**
16      **Enrollment By Calling The Plan Administrator And Advises Consumers**
17      **They Can Avoid Charges Only By Returning The "Description Of**
18      **Coverage" To The Company By Mail Or In Person.**

19      92.  Days or weeks after a consumer's enrollment in Smart-Step, Defendants
20  mail written material to the consumers (the "Written Smart-Step Materials").  The
21  Written Smart-Step Materials consist of:

22      a.  a one-page cover letter from Luke Wetterau, who is identified as
23  a Licensed Agent with Banc of America Insurance Services, Inc. (the "Smart-Step
24  Cover Letter");

25      b.  a two-page document containing in small-point font a "Benefit
26  Schedule" and a "Description of Coverage" (collectively, the "Description of
27  Coverage"); and
28  ////

KNAPP, PETERSEN & CLARKE

-22-  Complaint/Demand for Jury Trial

1462406.1 08000/00950

1             c.     a one-page document, the top 75% of which is blank and the

2  bottom 25% of which contains a form marked "IMPORTANT" that instructs the

3  consumer to complete the form and return it to the plan administrator by mail "TO

4  CONFIRM THAT YOU HAVE RECEIVED AND UNDERSTAND THE

5  DISCLOSURES BELOW" (the "Cal. Insur. Code § 762 Disclosure"). On

6  information and belief, Defendants include this form to attempt to comply with

7  California Insurance Code Section 762. On information and belief, no consumers

8  return the Cal. Insur. Code § 762 Disclosure to IISI.

9      93.   On information and belief, IISI drafts the Smart-Step Cover Letter and

10  mails it along with the other Written Smart-Step Materials to consumers.

11      94.   Defendants' scheme is designed to induce a reasonable consumer to

12  mistake the Written Smart-Step Materials for a piece of junk mail and disregard

13  them.

14      95.   Even if the consumer opens the envelope in which the Written Smart-

15  Step Materials are mailed the meaning or importance of the contents cannot be

16  discerned. Consumers receive numerous unsolicited insurance solicitations by mail

17  each year that are strikingly similar in content and appearance to the Written Smart-

18  Step Materials.

19      96.   The Description of Coverage is truncated and incomplete. For instance,

20  it does not contain all of the usual or expected definitions of policy terms.

21      97.   The Written Smart-Step Materials do not contain any invoice or bill.

22      98.   Where, as here, mailed solicitations are sent without any invoice or bill,

23  Defendants know that consumers reasonably and easily conclude that such

24  solicitations are junk mail.

25      99.   Even if the consumer recalls that the Written Smart-Step Materials

26  relate to Defendants' telemarketing solicitation, the scheme is designed so that

27  consumers cannot understand the confusing way the written materials present the

28  terms and conditions of Smart-Step. According to the written materials, which are

KNAPP,
PETERSEN
& CLARKE

-23-      Complaint/Demand for Jury Trial

1462406.1 08000/00950

1  only provided after consumers have already been enrolled in the plan, there are
2  numerous restrictions and qualifications on Smart-Step coverage. These restrictions
3  appear in small print in incomplete, indecipherable, misleading and obfuscatory
4  language, and are therefore not readily comprehensible to consumers. Based on the
5  deceptive, limited and incomplete materials provided by Defendants, consumers
6  cannot determine all of the exclusions and limitations of Smart-Step, the proof
7  required for claims, or the value of the product.

8      100.   The Written Smart-Step Materials deceptively fail to disclose, and/or
9  suppress, the material facts that the consumer has been enrolled in a plan for which
10 the consumer will be charged on a monthly basis and can avoid any charge by calling
11 the Plan Administrator prior to the expiration of the "thirty days of free insurance"
12 period or the "thirty-day complimentary review period."

13     101.   Although the telephone number for the Plan Administrator is provided,
14 it is provided for those consumers with questions, as follows: "Questions: Call the
15 Plan Administrator at 1.866.879.0179."

16     102.   The Written Smart-Step Materials do not contain an explanation of how
17 the Insured Customer can cancel his or her supposed authorization or can avoid
18 having his or her account charged for Smart-Step.

19     103.   Although the telephone number for the "Plan Administrator" is included
20 on the Cover Letter, there is no explanation whatsoever indicating that a consumer
21 can cancel his or her enrollment by telephoning the Plan Administrator.

22     104.   Moreover, although Defendants' telemarketers misleadingly disclose
23 that consumers can avoid any charge by acting affirmatively to call to cancel their
24 enrollment during the "thirty-day period of free insurance" or "thirty-day
25 complimentary review period," a section of the Description of Coverage entitled
26 "Right to Examine" contains the following contradictory statements and
27 representations:

KNAPP,
PETERSEN
& CLARKE      28  ////

-24-                              Complaint/Demand for Jury Trial

1462406.1 08000/00950

1  This Description of Coverage is issued to You as the Insured and can be
2  returned to the Company by mail or in person for any reason within the
3  later of: 1) 30 days after it is received; or 2) 30 days after the coverage
4  becomes effective.  Any premium paid will be refunded, and the
5  coverage will be treated as if it were never effective.

6  105.  The "Right To Examine" language is unfair, fraudulent, misleading and
7  unlawful because it contradicts the conditions on which Smart-Step was offered to
8  consumers.

9  106.  The "Right To Examine" language also makes the process of cancelling
10 one's enrollment in Smart-Step unreasonably and unfairly onerous, difficult and
11 unwieldy.  Rather than telephoning the Plan Administrator at a toll-free telephone
12 number, the representations and statements in the "Right To Examine" are designed
13 to require a consumer to return the "Description of Coverage" by mail or,
14 unbelievably, in person to "the Company."

15 107.  To induce consumers into taking no action following receipt of the
16 Written Smart-Step Materials, Defendants also misleadingly, fraudulently and
17 unfairly include the following statements and representations:

18 • Rest easy knowing you've got a plan to help your
19 family during a most difficult time.

20 • Your family is better prepared for the unexpected.

21 • You're among approximately 150,000 Bank of
22 America customers who have made a wise decision
23 to help protect their family by enrolling in this
24 accidental death insurance coverage.

25 • You know what's important – your family's future.

26 • With this Level Accidental Death Insurance
27 program, you can rest easy knowing your family will
28 have one less thing to worry about during a most

KNAPP, PETERSEN & CLARKE

-25-     Complaint/Demand for Jury Trial

1462406.1  08000/00950

1          difficult time.

2          108.   To further induce consumers into taking no action following receipt of

3   the Written Smart-Step Materials, Defendants misleadingly, fraudulently and

4   unfairly include the following statements and representations in tiny, small-point

5   font:

6                    • **Peace of mind protection.** In the event of a covered

7                      accident, your beneficiary will be paid the amount

8                      shown on the enclosed Description of Coverage from

9                      the National Union Fire Insurance Company. Please

10                     read this document

11                   • **No-cost to you for the first month.** Bank of

12                     America is paying your first month's premium.

13                   • **Convenient billing**. After the no-cost period, you'll

14                     enjoy the convenience of never having to write a

15                     check for your premium payment. You've

16                     authorized Bank of America to automatically debit

17                     your Bank of America checking account on or about

18                     the same time each month for your premium

19                     payment to National Union Fire Insurance Company.

20         109.   The representations and statements quoted above, wherein Defendants

21  advise the consumer that he or she has authorized BANA to automatically debit the

22  consumers checking account are hidden amidst the indecipherable, misleading, and

23  obfuscatory language and confusing layout of the Smart-Step Cover Letter.

24         110.   Upon information and belief, the Smart-Step Cover Letter provided to

25  BANA customers with credit card and mortgage accounts contains substantively

26  identical representations.

KNAPP,      27  ////
PETERSEN
& CLARKE    28  ////

                                        -26-              Complaint/Demand for Jury Trial

1462406.1  08000/00950

1 **G.** **Defendants Routinely Refuse to Refund Consumers Who Do Not Call**
2 **Within Thirty Days Of Being Involuntarily Enrolled, Often Making**
3 **Misleading and Deceptive Statements Regarding Consumers' Purported**
4 **Enrollment.**

5 111. Due to Defendants' fraudulent, unlawful and unfair scheme, many
6 consumers have no idea that they are enrolled in Smart-Step and do not notice or
7 appreciate the meaning of the line-item charge for Smart-Step that appears on their
8 checking account, credit card or residential mortgage statement each month. Some
9 consumers pay this inconspicuous charge month after month for many months or
10 longer before they become aware of the purpose of the charge, if they become aware
11 at all.

12 112. Based on the uniform practice of unfairly obfuscating these automatic
13 charges from customers, there are many reasons why a consumer may not understand
14 that Defendants have enrolled him or her in Smart-Step even though the charge for
15 Smart-Step appears on their checking account, credit card or residential mortgage
16 statement each month.

17 113. For those consumers with checking and/or credit card accounts, the
18 debit or charge appears among the other purchases on the consumer's monthly
19 statements. Many account holders rely on the integrity of BANA's monthly
20 statements as setting forth legitimate charges the consumer authorized.

21 114. Consumers holding residential mortgage loans often make their monthly
22 payment without examining their written residential mortgage loan records.

23 115. Additionally, on information and belief, the line-item report of the
24 Smart-Step debit transaction on the account statements of BANA customers does not
25 contain any language by which a consumer could identify Smart-Step, as follows:
26 "Bank of America DES: 8668790179 ID: 4506805 INDN: [CONSUMER NAME]
27 Co ID: l941687665 PPD: Ref:009294006799121."
28 ////

KNAPP,
PETERSEN
& CLARKE

-27- Complaint/Demand for Jury Trial

1    116.  Further, customers with joint checking and/or credit card accounts may
2  reasonably assume that the other person with authority to use that account made a
3  small purchase.

4    117.  Some credit card account customers may not make new purchases with
5  their BANA credit card but are instead paying down an existing balance, such as
6  those customers who took advantage of a balance transfer offer or who are financing
7  one big expense on the account.  Many such consumers pay only the minimum
8  amount due each month, or some other pre-determined amount, and do not review
9  their statements for new unauthorized charges.

10    118.  Other BANA customers, instead of reviewing monthly account
11  statements, reasonably rely on BANA's fraud-protection services pursuant to which a
12  hold is placed on a debit card and/or credit card number at the first sign of suspicious
13  unauthorized activity on the consumers' account

14    119.  Defendants are aware that, for these and other reasons, consumers do
15  not always and regularly review their account statements for the purpose of
16  identifying potentially unauthorized charges; and, thus, Defendants exploit
17  consumers by continuing to debit the Smart-Step premium from consumers'
18  checking account, credit card account, and/or by adding the premium to a
19  consumer's residential mortgage loan payment, without the consumer's informed and
20  express written authorization or knowledge.

21                         **PLAINTIFF STARLA PACINI**

22    120.  Plaintiff Starla Pacini ("Pacini") is a citizen of the State of California,
23  residing in the City of Pittsburg.

24    121.  Prior to 2006, BANA issued a credit card account to Pacini.

25    122.  On a date readily ascertainable from Defendants' records, Plaintiff
26  Pacini received a telemarketing solicitation call from Defendants' unlicensed
27  telemarketer regarding Smart-Step.  The identity of Defendants' unlicensed
28  telemarketer is readily ascertainable from Defendants' records.

KNAPP,
PETERSEN
& CLARKE

-28-                    Complaint/Demand for Jury Trial

1462406.1  08000/00950

1   123. Plaintiff Pacini does not recall receiving a telemarketing call from

2 BANA or IISI regarding Smart-Step.

3   124. Plaintiff Pacini did not receive written Smart-Step materials explaining

4 the terms and conditions of Smart-Step before being enrolled in Smart-Step.

5   125. Plaintiff Pacini does not recall receiving any written materials regarding

6 Smart-Step.

7   126. Defendants intentionally, fraudulently and unfairly designed their

8 uniform scheme so that consumers would not appreciate and understand the

9 significance of the telemarketing solicitation and/or the Written Smart-Step

10 Materials, and would readily forget that they had received Defendants' telemarketing

11 solicitation and/or Defendants' Written Smart-Step Materials.

12   127. Plaintiff Pacini did not provide her informed and express consent,

13 written or otherwise, to be enrolled in Smart-Step, either on the telephone or

14 thereafter, and did not believe that she was enrolled in the program.

15   128. Plaintiff Pacini did not provide her credit card information to

16 Defendants' telemarketer.

17   129. Plaintiff Pacini did not provide her informed consent, written or

18 otherwise, authorizing any Defendant to automatically charge her credit card in the

19 amount of $20 on a monthly basis.

20   130. Plaintiff Pacini never received a bill or invoice for Smart-Step.

21   131. Defendants never asked Plaintiff Pacini to name a beneficiary. If

22 Plaintiff Pacini had died as a result of a covered accident, no one would have

23 provided notice of a claim under the Smart-Step policy because neither Plaintiff

24 Pacini nor her family members were aware that Defendants had enrolled Plaintiff

25 Pacini in Smart-Step.

26   132. On or around April 2009, Plaintiff Pacini discovered unauthorized

27 charges for "Smart Step Insur" on her credit card account. She then reviewed her

28 previous statements and discovered other unauthorized charges for Smart-Step.

KNAPP,
PETERSEN
& CLARKE

1462406.1  08000/00950

1    133. Beginning on a date that can be readily ascertained from Defendants'
2 records, and continuing through March 2009, a premium for Smart-Step in the
3 amount of $20 was automatically charged to Plaintiff Pacini's credit card account
4 each month.

5    134. Because Plaintiff Pacini had not provided her informed and express
6 consent to be enrolled in the Smart-Step and had not provided her informed and
7 express written consent to be charged for Smart-Step, she called the customer service
8 line for BANA to complain and seek reversal of the charges. The BANA customer
9 service representative advised Plaintiff Pacini to telephone IISI.

10    135. The IISI customer service representative advised Plaintiff Pacini that
11 she had provided her consent to enroll in Smart-Step and that Plaintiff Pacini was
12 therefore ineligible to obtain a refund.

13    136. The total amount of premiums paid by Plaintiff Pacini can be
14 ascertained from Defendants' records.

15    137. Defendants have not refunded the money Plaintiff Pacini paid towards
16 the Smart-Step premiums, even though she did not provide her informed, written
17 authorization to be billed for Smart-Step through automatic, recurring charges to her
18 credit card account and requested a refund for the unauthorized charges.

19                        **PLAINTIFF MARIA SANCHEZ**

20    138. Plaintiff Maria Sanchez ("Sanchez") is a citizen of the State of
21 California, residing in Los Angeles.

22    139. Plaintiff Sanchez principally speaks Spanish.

23    140. At all relevant times, Plaintiff held a checking account issued by
24 BANA.

25    141. On a date readily ascertainable from Defendants' records, Plaintiff
26 Sanchez received a telemarketing solicitation call from Defendants' unlicensed
27 telemarketer regarding Smart-Step. The identity of Defendants' unlicensed
28 telemarketer is readily ascertainable from Defendants' records.

KNAPP,
PETERSEN
& CLARKE

1462406.1  08000/00950

1    142.  Plaintiff Sanchez does not recall receiving a telemarketing call from
2  BANA or IISI regarding Smart-Step.

3    143.  Plaintiff Sanchez did not receive written Smart-Step materials
4  explaining the terms and conditions of Smart-Step before being enrolled in Smart-
5  Step.

6    144.  Plaintiff Sanchez does not recall receiving any written Smart-Step
7  materials.

8    145.  Defendants intentionally, fraudulently and unfairly designed their
9  uniform scheme so that consumers would not appreciate and understand the
10  significance of the telemarketing solicitation and/or the written Smart-Step materials,
11  and would readily forget that they had received Defendants' telemarketing
12  solicitation and/or Defendants' Written Smart-Step Materials.

13    146.  Plaintiff Sanchez did not provide her informed and express consent,
14  written or otherwise, to be enrolled in Smart-Step, either on the telephone or
15  thereafter, and did not believe that she was enrolled in the program.

16    147.  Plaintiff Sanchez did not provide her debit card information to
17  Defendants' telemarketer.

18    148.  Plaintiff Sanchez did not provide her written consent authorizing any
19  Defendant to automatically debit her checking account in the amount of $20 on a
20  monthly basis.

21    149.  Plaintiff Sanchez never received one bill or invoice for Smart-Step.

22    150.  Defendants never asked Plaintiff Sanchez to name a beneficiary.  If
23  Plaintiff Sanchez had died as a result of a covered accident, no member of Plaintiff
24  Sanchez's family could have provided notice of a claim under the Smart-Step policy
25  because neither Plaintiff Sanchez nor any member of her family was aware that
26  Defendants had enrolled Plaintiff Sanchez in Smart-Step.

27    151.  In or around February 2012, Plaintiff Sanchez discovered unauthorized
28  charges for "Level AD" on her checking account statements.  She then reviewed her

1 previous statements and discovered other unauthorized charges for Smart-Step.

2    152. Beginning on date readily ascertainable from Defendants' records, and
3 continuing through February 2012, a premium for Smart-Step in the amount of $20
4 was automatically debited from Plaintiff Sanchez's checking account each month.

5    153. Because Plaintiff Sanchez had not provided her informed and express
6 consent to be enrolled in the Smart-Step and had not provided her informed and
7 express written consent to be charged by EFT for Smart-Step, she called the
8 customer service line for BANA to complain about, and seek reversal of, the charges.
9 The BANA customer service representative advised Plaintiff Sanchez to telephone
10 IISI. The IISI customer service representative made it difficult for Plaintiff Sanchez
11 to cancel the plan although she ultimately was successful in stopping the
12 unauthorized debits from her account.

13    154. The total amount of premiums paid by Plaintiff Sanchez for Smart-Step
14 can be readily ascertained from Defendants' records. The total amount of overdraft
15 fees attributable to the unauthorized charges for Smart-Step also can be ascertained
16 from Defendants' records.

17    155. Defendants have not refunded the money Plaintiff Sanchez paid towards
18 the Smart-Step premiums, even though she did not provide her informed, written
19 authorization to be billed for Smart-Step through automatic, recurring EFTs and
20 requested a refund for the unauthorized charges.

21                    **PLAINTIFF ALBA PENAGOS**

22    156. Plaintiff Alba Penagos is a citizen of the State of Virginia, residing in
23 Moneta.

24    157. Plaintiff Alba Penagos principally speaks Spanish.

25    158. At all relevant times, Plaintiff Alba Penagos held a checking account
26 with BANA.

27    159. On or about February 18, 2008, a telephone solicitation call was made to
28 Plaintiff Alba Penagos.

KNAPP,
PETERSEN
& CLARKE

-32-                    Complaint/Demand for Jury Trial

1462406.1  08000/00950

1    160.  The call was from Defendants' unlicensed telemarketer.  The identity of
2  Defendants' unlicensed telemarketer is readily ascertained from Defendants' records.

3    161.  Plaintiff Alba Penagos does not recall receiving a telemarketing call
4  from BANA or IISI regarding Smart-Step.

5    162.  Plaintiff Alba Penagos did not receive written Smart-Step materials
6  explaining the terms and conditions of Smart-Step before being enrolled in Smart-
7  Step.

8    163.  Plaintiff Alba Penagos does not recall receiving any written Smart-Step
9  materials.

10    164.  Defendants intentionally, fraudulently and unfairly designed their
11  uniform scheme so that consumers would not appreciate and understand the
12  significance of the telemarketing solicitation and/or the written Smart-Step materials,
13  and would readily forget that they had received Defendants' telemarketing
14  solicitation and/or Defendants' Written Smart-Step Materials.

15    165.  Plaintiff Alba Penagos did not provide her informed and express
16  consent, written or otherwise, to be enrolled in Smart-Step, either on the telephone or
17  thereafter, and did not believe that she was enrolled in the program.

18    166.  Plaintiff Alba Penagos did not provide her debit card information to
19  Defendants' telemarketer.

20    167.  Plaintiff Alba Penagos did not provide her written consent authorizing
21  any Defendant to automatically debit her checking account in the amount of $20 on a
22  monthly basis.

23    168.  Plaintiff Alba Penagos never received one bill or invoice for Smart-
24  Step.

25    169.  Defendants never asked Plaintiff Alba Penagos to name a beneficiary.
26  If Plaintiff Alba Penagos had died as a result of a covered accident, no member of
27  Plaintiff Alba Penagos's family could have provided notice of a claim under the
28  Smart-Step policy because neither Plaintiff Alba Penagos nor any member of her

KNAPP,
PETERSEN
& CLARKE

-33-        Complaint/Demand for Jury Trial

1  family was aware that Defendants had enrolled Plaintiff Alba Penagos in Smart-Step.

2  170. In or around March of 2012, Plaintiff Alba Penagos discovered
3  unauthorized charges for "Level AD" on her checking account statements. She then
4  reviewed her previous statements and discovered other unauthorized charges for
5  Smart-Step.

6  171. Beginning in March 2008, and continuing through March 2012, a
7  premium for Smart-Step in the amount of $20 was automatically debited from
8  Plaintiff Alba Penagos's checking account each month.

9  172. Because Plaintiff Alba Penagos had not provided her informed and
10  express consent to be enrolled in the Smart-Step and had not provided her informed
11  and express written consent to be charged by EFT for Smart-Step, she called the
12  customer service line for BANA to complain about, and seek reversal of, the charges.
13  The BANA customer service representative advised Plaintiff Alba Penagos to
14  telephone IISI. The IISI customer service representative made it difficult for
15  Plaintiff Alba Penagos to cancel the plan although she ultimately was successful in
16  stopping the unauthorized debits from her account.

17  173. The total amount of premiums paid by Plaintiff Alba Penagos for Smart-
18  Step can be readily ascertained from Defendants' records. The total amount of
19  overdraft fees attributable to the unauthorized charges for Smart-Step also can be
20  ascertained from Defendants' records.

21  174. Defendants have not refunded the money Plaintiff Alba Penagos paid
22  towards the Smart-Step premiums, even though she did not provide her informed,
23  written authorization to be billed for Smart-Step through automatic, recurring EFTs
24  and requested a refund for the unauthorized charges.

25  **PLAINTIFF HECTOR PENAGOS**

26  175. Plaintiff Hector Penagos is a citizen of the State of Virginia, residing in
27  Moneta.

28  176. Plaintiff Hector Penagos principally speaks Spanish.

KNAPP,
PETERSEN
& CLARKE

-34-                    Complaint/Demand for Jury Trial

1462406.1 08000/00950

1    177. At all relevant times, Plaintiff Hector Penagos held a checking account
2 with BANA.

3    178. On or about February 18, 2008, a telephone solicitation call was made to
4 Plaintiff Alba Penagos, wife of Plaintiff Hector Penagos.

5    179. The call was from Defendants' unlicensed telemarketer. The identity of
6 Defendants' unlicensed telemarketer is readily ascertained from Defendants' records.

7    180. Plaintiff Alba Penagos does not recall receiving a telemarketing call
8 from BANA or IISI regarding Smart-Step.

9    181. Plaintiff Hector Penagos did not receive written Smart-Step materials
10 explaining the terms and conditions of Smart-Step before being enrolled in Smart-
11 Step.

12    182. Plaintiff Hector Penagos does not recall receiving any written Smart-
13 Step materials.

14    183. Defendants intentionally, fraudulently and unfairly designed their
15 uniform scheme so that consumers would not appreciate and understand the
16 significance of the telemarketing solicitation and/or the written Smart-Step materials,
17 and would readily forget that they had received Defendants' telemarketing
18 solicitation and/or Defendants' Written Smart-Step Materials.

19    184. Plaintiff Hector Penagos did not provide his informed and express
20 consent, written or otherwise, to be enrolled in Smart-Step, either on the telephone or
21 thereafter, and did not believe that he was enrolled in the program.

22    185. Plaintiff Hector Penagos did not provide his debit card information to
23 Defendants' telemarketer.

24    186. Plaintiff Hector Penagos did not provide his written consent authorizing
25 any Defendant to automatically debit his checking account in the amount of $20 on a
26 monthly basis.

27    187. Plaintiff Hector Penagos never received one bill or invoice for Smart-
28 Step.

KNAPP,
PETERSEN
& CLARKE

-35-    Complaint/Demand for Jury Trial

1462406.1 08000/00950

1       188. Defendants never asked Plaintiff Hector Penagos to name a beneficiary.
2 If Plaintiff Hector Penagos had died as a result of a covered accident, no member of
3 Plaintiff Hector Penagos's family could have provided notice of a claim under the
4 Smart-Step policy because neither Plaintiff Hector Penagos nor any member of his
5 family was aware that Defendants had enrolled Plaintiff Hector Penagos in Smart-
6 Step.

7       189. In or around March of 2012, Plaintiffs Alba and Hector Penagos
8 discovered unauthorized charges for "Level AD" on his checking account statements.
9 He then reviewed his previous statements and discovered other unauthorized charges
10 for Smart-Step.

11       190. Beginning in March 2008, and continuing through March 2012, a
12 premium for Smart-Step in the amount of $20 was automatically debited from
13 Plaintiff Hector Penagos's checking account each month.

14       191. Because Plaintiff Hector Penagos had not provided his informed and
15 express consent to be enrolled in the Smart-Step and had not provided his informed
16 and express written consent to be charged by EFT for Smart-Step, he called the
17 customer service line for BANA to complain about, and seek reversal of, the charges.
18 The BANA customer service representative advised Plaintiff Hector Penagos to
19 telephone IISI. The IISI customer service representative made it difficult for
20 Plaintiff Hector Penagos to cancel the plan although he ultimately was successful in
21 stopping the unauthorized debits from her account.

22       192. The total amount of premiums paid by Plaintiff Hector Penagos for
23 Smart-Step can be readily ascertained from Defendants' records. The total amount
24 of overdraft fees attributable to the unauthorized charges for Smart-Step also can be
25 ascertained from Defendants' records.

26       193. Defendants have not refunded the money Plaintiff Hector Penagos paid
27 towards the Smart-Step premiums, even though he did not provide his informed,
28 written authorization to be billed for Smart-Step through automatic, recurring EFTs

KNAPP,
PETERSEN
& CLARKE

-36-        Complaint/Demand for Jury Trial

1  and requested a refund for the unauthorized charges.

2  **TOLLING THE STATUTE OF LIMITATIONS**

3  194.  Any applicable statutes of limitation have been tolled by Defendants'
4  knowing and active concealment of the facts as alleged herein.  Plaintiffs and Class
5  members have been kept ignorant of vital information essential to the pursuit of these
6  claims, without any fault or lack of diligence on their part.  Plaintiffs and Class
7  members could not reasonably have discovered the true nature of Smart-Step.

8  195.  Defendants are and have been under a continuing duty to disclose to the
9  Plaintiffs and the Class the true character, quality, and nature of Smart-Step.
10  Because of their knowing, affirmative and/or active concealment of the true
11  character, quality and nature of Smart-Step, Defendants are estopped from relying on
12  any statutes of limitation in their defense of this action.

13  **CLASS ACTION ALLEGATIONS**

14  196.  Plaintiffs bring this action on their own behalf and on behalf of a class
15  of all other persons similarly situated pursuant to Rule 23(b)(2) and Rule 23(b)(3) of
16  the Federal Rules of Civil Procedure.

17  197.  Plaintiffs bring this action as class representatives to recover damages
18  and/or refunds from Defendants' violations of RICO, California Business and
19  Professions Code Section 17200, et al., fraud based on concealment, and for
20  injunctive relief, declaratory judgment and restitution.

21  198.  This action satisfies the numerosity, commonality, typicality, adequacy,
22  predominance and superiority requirements of Rule 23(a) and (b) of the Federal
23  Rules of Civil Procedure.

24  199.  Plaintiffs seek certification of a Class defined as follows:
25        Any person who from a time four years before the date of
26        this complaint to the present:  (1) held a Bank of America
27        consumer credit card account, checking account and/or
28        residential mortgage loan issued by Bank of America, N.A.

KNAPP,
PETERSEN
& CLARKE

-37-  Complaint/Demand for Jury Trial

1    ("BANA"); (2) was enrolled in the Smart-Step Accidental

2    Death Insurance Program ("Smart-Step"); (3) had

3    premiums for Smart-Step automatically transferred from

4    his or her BANA checking account or charged to his or her

5    credit card account, or added to his or her residential

6    mortgage loan payment; and (4) who did not obtain a full

7    refund of all premiums paid for Smart-Step. ("Nationwide

8    Subclass")

9    200.  In the alternative, Plaintiffs seek certification of a class of California

10  residents defined as follows:

11    Any person who from four years before the date of this

12    complaint to the present: (1) held a Bank of America

13    consumer credit card account, checking account and/or

14    residential mortgage loan issued by Bank of America, N.A.

15    ("BANA"); (2) had a California mailing address for

16    purposes of communicating with BANA; (3) was enrolled

17    in the Smart-Step Accidental Death Insurance Program

18    ("Smart-Step"); (4) had premiums for Smart-Step

19    automatically transferred from his or her checking account

20    or charged to his or her credit card account, or added to his

21    or her residential mortgage loan payment; and (5) did not

22    obtain a full refund of all premiums paid for Smart-Step.

23    ("California Subclass").

24  201.  Plaintiffs reserve the right to modify or amend the definition of the

25  proposed Class and Subclass before the Court determines whether certification is

26  appropriate.

27  202.  Excluded from the Class and Subclass are: (a) Defendants and any

28  entities in which Defendants have a controlling interest; (b) Any entities in which

KNAPP,
PETERSEN
& CLARKE

-38-                    Complaint/Demand for Jury Trial

1 Defendants' officers, directors, or employees are employed and any of the legal
2 representatives, heirs, successors, or assigns of Defendants; (c) The Judge to whom
3 this case is assigned and any member of the Judge's immediate family and any other
4 judicial officer assigned to this case; (d) All persons or entities that properly execute
5 and timely file a request for exclusion from the Class; (e) Any attorneys representing
6 the Plaintiffs or the Class; and (e) All governmental entities.

7       203.   Numerosity—Fed. R. Civ. P. 23(a)(1).  The Class and Subclass is
8 comprised of many thousands of individuals who were BANA customers, the joinder
9 of which in one action would be impracticable.  The exact number or identification
10 of the Class and Subclass members is presently unknown.  The identity of the Class
11 and Subclass members is ascertainable and can be determined based on Defendants'
12 records.

13      204.   Predominance of Common Questions—Fed. R. Civ. P. 23(a)(2),
14 23(b)(3).  The questions of law and fact common to the Class and Subclass
15 predominate over questions affecting only individual Class and Subclass members,
16 and include, but are not limited to, the following:

17              a.     Whether Defendants' common scheme of promoting, offering for
18 sale, selling and administering Smart-Step, as alleged in this Complaint, is
19 fraudulent, deceptive, unlawful and/or unfair in violation of California statutory and
20 common law;

21              b.     Whether Defendants complied with the requirements of the EFTA
22 in connection with the debits and/or preauthorized electronic fund transfers
23 Defendants initiated from the checking accounts of Plaintiffs and Class and Subclass
24 members;

25              c.     Whether Defendants' common and uniform telemarketing scheme
26 complied with the requirements of the FTC's Telemarketing Sales Rule;

27              d.     Whether Defendants' common and uniform scheme violates
28 RICO;

**KNAPP,**
**PETERSEN**
**& CLARKE**

Complaint/Demand for Jury Trial

1            e.     Whether Plaintiffs and Class and Subclass members are entitled

2 to declaratory, injunctive and/or equitable relief;

3            f.     Whether Plaintiffs and Class and Subclass members are entitled

4 to compensatory damages, including actual and statutory damages; and

5            g.     Whether Defendants' conduct rises to the level of reprehensibility

6 under applicable law such that the imposition of punitive damages is necessary and

7 appropriate to fulfill the societal interest in punishment and deterrence, and the

8 amount of such damages and/or their ratio to the actual or potential harm to the

9 Class.

10      205.   Typicality—Fed. R. Civ. P. 23(a)(3). Plaintiffs assert claims that are

11 typical of the entire Class and Subclass, in that Plaintiffs did not provide their

12 informed and express consent to voluntarily enroll in Smart-Step and did not provide

13 their informed and express authorization, written or otherwise, to be charged for

14 Smart-Step.

15      206.   Adequacy—Fed. R. Civ. P. 23(a)(4); 23(g)(1). Plaintiffs are adequate

16 representatives of the Class and Subclass because they fit within the class definition

17 and their interests do not conflict with the interests of the Class and Subclass

18 members they seek to represent. Plaintiffs are represented by experienced Class

19 Counsel. Class Counsel have litigated numerous class actions, and Plaintiffs'

20 counsel intends to prosecute this action vigorously for the benefit of the entire Class

21 and Subclass. Plaintiffs and Class Counsel can fairly and adequately protect the

22 interests of all of the Class and Subclass members.

23      207.   Superiority—Fed. R. Civ. P. 23(b)(3). The class action is the best

24 available method for the efficient adjudication of this litigation because individual

25 litigation of Class and Subclass members' claims would be impracticable and

26 individual litigation would be unduly burdensome to the courts. Plaintiffs and

27 members of the Class and Subclass have suffered irreparable harm as a result of

28 Defendants' fraudulent, deceitful, unlawful, and unfair conduct. Because of the size

KNAPP,
PETERSEN
& CLARKE

-40-          Complaint/Demand for Jury Trial

1 of the individual Class and Subclass members' claims, no Class or Subclass members

2 could afford to seek legal redress for the wrongs identified in this Complaint.

3 Without the class action vehicle, the Class would have no reasonable remedy and

4 would continue to suffer losses, as Defendants continue to engage in the unlawful,

5 unfair, and unconscionable conduct that is the subject of this Complaint, and

6 Defendants would be permitted to retain the proceeds of their violations of law.

7 Further, individual litigation has the potential to result in inconsistent or

8 contradictory judgments. A class action in this case presents fewer management

9 problems and provides the benefits of single adjudication, economies of scale, and

10 comprehensive supervision by a single court.

11                              **COUNT I**

12                     **(Fraud Based on Concealment)**

13        **(On Behalf of Plaintiffs and California Subclass Members)**

14        208.   Plaintiffs restate and re-allege the preceding paragraphs of this

15 Complaint as though set out here word for word.

16        209.   Under California law, the elements of an action for fraud based on

17 concealment are: (1) the defendant must have concealed or suppressed a material

18 fact; (2) the defendant must have been under a duty to disclose the fact to the

19 plaintiff; (3) the defendant must have intentionally concealed or suppressed the fact

20 with the intent to defraud the plaintiff; (4) the plaintiff must have been unaware of

21 the fact and would not have acted as he did if he had known of the concealed or

22 suppressed fact; and (5) as a result of the concealment or suppression of the fact, the

23 plaintiff must have sustained damage.

24        210.   First, Defendants' intentionally concealed or suppressed the following

25 material facts, among others alleged herein:

26              a.      During the telemarketing solicitation call, Defendants'

27 telemarketers intentionally failed to disclose that Defendants possessed the checking

28 account and/or credit card account information of Plaintiffs Pacini, Sanchez Alba

KNAPP,
PETERSEN
& CLARKE

-41-                    Complaint/Demand for Jury Trial

1 Penagos, Hector Penagos and Class members, and could cause their billing
2 information to be submitted for payment without obtaining the checking account,
3 credit card and/or mortgage account information directly from Plaintiffs and Class
4 members.

5        b.    During the telemarketing solicitation call, Defendants'
6 telemarketers intentionally omitted the fact and/or failed to disclose in a clear and
7 conspicuous manner that customers had to affirmatively decline enrollment in Smart-
8 Step prior to the expiration of the 30-day complimentary review period in order to
9 avoid incurring ongoing charges.

10        c.    Defendants' written Smart-Step materials also conceal and/or
11 suppress the fact that customers had to affirmatively decline enrollment in Smart-
12 Step prior to the expiration of the 30-day complimentary review period in order to
13 avoid incurring ongoing charges.

14        d.    Defendants' written Smart-Step materials also conceal and/or
15 suppress the fact that customers had to telephone the Plan Administrator to cancel
16 their enrollment in Smart-Step.

17        e.    Numerous additional material omissions are identified with
18 particularity herein, including in Paragraph 56.

19    211.  Second, under California law, a duty to disclose arises: (a) when the
20 defendant had exclusive knowledge of material facts not known to the plaintiff; (b)
21 when the defendant actively conceals a material fact from the plaintiff; and (c) when
22 the defendant makes partial representations but also suppresses some material facts.

23    212.  Defendants had a duty to disclose to Plaintiffs and the Class the true
24 nature of the Smart-Step program and its terms and conditions because: (a)
25 Defendants had exclusive knowledge of the terms and conditions pursuant to which
26 Smart-Step was offered, including the free-to-pay conversion and negative option
27 features, at the time Plaintiffs and Class members were enrolled in Smart-Step
28 without their express and informed consent and charged without their express and

KNAPP,
PETERSEN
& CLARKE

-42-                    Complaint/Demand for Jury Trial

1462406.1  08000/00950

1   informed authorization, written or otherwise; (b) Defendants actively concealed from
2   Plaintiffs and the Class the true nature of the terms, conditions, limitations and proof
3   required for claims, and/or that they were being enrolled in Smart-Step without their
4   authorization, which was material information to customers; and (c) Defendants
5   made partial representations regarding the nature and benefits of Smart-Step that
6   were misleading to Plaintiffs and the Class, such as telling them that Smart-Step
7   coverage would be provided at no cost to the consumer for thirty days without telling
8   them clearly and conspicuously that they had to affirmatively decline enrollment by a
9   date certain in order to avoid being enrolled involuntarily and charged without their
10  knowledge or informed and express authorization, written or otherwise.

11      213.   Defendants' duty to disclose also arises under California Insurance
12  Code Section 332, which provides that "Each party to a contract of insurance shall
13  communicate to the other, in good faith, all facts within his knowledge which are or
14  which he believes to be material to the contract and as to which he makes no
15  warranty, and which the other has not the means of ascertaining."

16      214.   In addition, Defendants' duty to disclose arises under California
17  Insurance Code Sections 330 ("Neglect to communicate that which a party knows,
18  and ought to communicate, is concealment."); 331 ("Concealment, whether
19  intentional or unintentional, entitles the injured party to rescind insurance."); and 334
20  ("Materiality is to be determined not by the event, but solely by the probable and
21  reasonable influence of the facts upon the party to whom the communication is due,
22  in forming his estimate of the disadvantages of the proposed contract, or in making
23  his inquiries.").

24      215.   Further, Defendants' duty to disclose arises under the FTC's
25  Telemarketing Sales Rule, which requires telemarketers to disclose truthfully, clearly
26  and conspicuously "[a]ll material restrictions, limitations, or conditions to purchase,
27  receive, or use the goods or services that are the subject of the sales offer" before the
28  customer pays for the goods or services offered.  16 C.F.R. § 310.3(a)(1)(ii).

KNAPP,
PETERSEN
& CLARKE

-43-                        Complaint/Demand for Jury Trial

1462406.1 08000/00950

1    216. Third, Defendants intentionally concealed or suppressed the material
2  facts with the intent to defraud Plaintiffs and the Class. The entire scheme – from the
3  obfuscatory, complex and misleading language used in the telemarketing solicitation
4  to the layout, design and language used in the Written Smart-Step Materials to the
5  material omissions alleged herein – is intended to defraud Plaintiffs and the Class.

6    217. Fourth, the marketing scheme was designed so that Plaintiffs and the
7  Class were unaware of the material facts, among others alleged herein, that
8  Defendants had the ability to charge the consumer's account without obtaining the
9  account number from the consumer; and that the Smart-Step offer included a free-to-
10  pay conversion and negative option feature. Plaintiffs and Class members would not
11  have acted as they did if they had known of the concealed or suppressed facts.

12    218. Plaintiffs and the Class reasonably and justifiably relied to their
13  detriment on Defendants' fraudulent nondisclosure of the facts that the Smart-Step
14  offer included a free-to-pay conversion and negative option feature and that they had
15  been involuntarily enrolled in Smart-Step. Plaintiffs and the Class acted as
16  reasonably prudent consumers by relying on Defendants' fraudulent omissions and
17  failure to disclose that they had been enrolled and were paying the Smart-Step
18  premiums.

19    219. Defendants' uniform scheme was designed so that Plaintiffs and Class
20  members did not know that the Smart-Step offer included a free-to-pay conversion
21  and negative option feature, and would not have paid for the unauthorized charges
22  for Smart-Step but for Defendants' knowing fraudulent conduct in enrolling them in
23  Smart-Step without their informed express consent and submitting their billing
24  information for payment without their written authorization. Plaintiffs are entitled to
25  a class-wide presumption of reliance here, where their case is one that primarily
26  alleges omissions.

27    220. Fifth, Plaintiffs and Class members have been damaged in that
28  Defendants debited or charged their accounts without authorization for the Smart-

KNAPP,
PETERSEN
& CLARKE

-44-    Complaint/Demand for Jury Trial

1  Step premiums and Plaintiff Sanchez and other members of the Class incurred
2  overdraft and/or over-limit fees as a result of the unauthorized charges.

3      221.  As a result of Defendants' fraudulent material omissions, Plaintiffs and
4  the Class suffered pecuniary loss in an amount not less than the monthly premiums
5  paid for Smart-Step and the overdraft/over-limit fees incurred as a result of the
6  unauthorized charges for Smart-Step, plus interest.

7                          **COUNT II**

8  **(Violations of the Racketeer Influenced and Corrupt Organizations Act, 18**
9                  **U.S.C. § 1962 (a, b, c & d).**

10  **(On Behalf of Plaintiffs, Nationwide Class and the California Subclass)**

11      222.  Plaintiffs restate and re-allege the preceding paragraphs of this
12  Complaint as though set out here word for word.

13      223.  This claim arises under 18 U.S.C. §1962 (a, b, c & d), which provides in
14  pertinent part:

15          a.    It shall be unlawful for any person who has received any
16  income derived, directly or indirectly, from a pattern of racketeering activity
17  or through collection of an unlawful debt in which such person has
18  participated as a principal within the meaning of section 2, title 18, United
19  States Code, to use or invest, directly or indirectly, any part of such income, or
20  the proceeds of such income, in acquisition of any interest in, or the
21  establishment or operation of, any enterprise which is engaged in, or the
22  activities of which affect, interstate or foreign commerce. . .

23          b.    It shall be unlawful for any person through a pattern of
24  racketeering activity or through collection of an unlawful debt to acquire or
25  maintain, directly or indirectly, any interest in or control of any enterprise
26  which is engaged in, or the activities of which affect, interstate or foreign
27  commerce.
28  ////

KNAPP,
PETERSEN
& CLARKE

-45-                              Complaint/Demand for Jury Trial

1           c.     It shall be unlawful for any person employed by or
2  associated with any enterprise engaged in, or the activities of which affect,
3  interstate or foreign commerce, to conduct or participate, directly or indirectly,
4  in the conduct of such enterprise's affairs through a pattern of racketeering
5  activity or collection of unlawful debt.

6           d.     It shall be unlawful for any person to conspire to violate
7  any of the provisions of subsection (a), (b), or (c) of this section.

8      224.  As a direct and indirect result of Defendants' conduct as described
9  herein, substantial income was generated, received by and came under the control of
10  Defendants. Defendants used that income to establish and/or operate the Smart-Step
11  Enterprise, which was engaged in interstate and foreign commerce. Therefore,
12  Defendants have violated 18 U.S.C. § 1962 (a).

13      225.  Defendants, through the conduct described above, maintained and
14  exercised control over the Smart-Step Enterprise, which was engaged in or affected
15  interstate commerce. Therefore, Defendants have violated 18 U.S.C. § 1962(b).

16      226.  In violation of 18 U.S.C. § 1962(c), Defendants have conducted or
17  participated, directly or indirectly, in the conduct of affairs of the Smart-Step
18  Enterprise through a "pattern of racketeering activity," as defined by 18 U.S.C. §
19  1961(5).

20      227.  At all relevant times, Defendants were "persons" within the meaning of
21  18 U.S.C. § 1961(3), because each was "capable of holding a legal or beneficial
22  interest in property."

23      228.  The Smart-Step Enterprise constituted a single "enterprise" or multiple
24  enterprises within the meaning of 18 U.S.C. § 1961(4), as individuals and other
25  entities associated-in-fact for the common purpose of engaging in Defendants' profit-
26  making scheme.

27      229.  The Smart-Step Enterprise was created and/or used as a tool to carry out
28  the elements of Defendants' illicit scheme and pattern of racketeering activity. The

KNAPP,
PETERSEN
& CLARKE

1462406.1 08000/00950

1  Smart-Step Enterprise has ascertainable structures and purposes beyond the scope
2  and commission of Defendants' predicate acts and conspiracy to commit such acts.
3  The enterprise is separate and distinct from Defendants.

4      230.   The Smart-Step Enterprise has engaged in, and its activities affected,
5  interstate and foreign commerce by soliciting, marketing, selling and issuing
6  accidental death policies to thousands, if not tens of thousands, of persons within the
7  United States.

8      231.   The Smart-Step Enterprise actively disguised the nature of Defendants'
9  wrongdoing and concealed or misrepresented Defendants' participation in the
10  conduct of the Smart-Step Enterprise to maximize profits while minimizing their
11  exposure to criminal and civil penalties.

12      232.   Each Defendant exerted substantial control over the Smart-Step
13  Enterprise, and participated in the operation and managed the affairs of the Smart-
14  Step Enterprise, as described herein.

15      233.   Defendants have committed, or aided and abetted the commission of, at
16  least two acts of racketeering activity – indictable violations of 18 U.S.C. §§ 1341
17  and 1343, within the past 10 years.  The multiple acts of racketeering activity which
18  Defendants committed and/or conspired to, or aided and abetted in the commission
19  of, were related to each other, pose a threat of continued racketeering activity, and
20  therefore constitute a "pattern of racketeering activity."

21      234.   Defendants' predicate acts of racketeering within the meaning of 18
22  U.S.C. § 1961(1) include, but are not limited to:

23          a.      **Wire Fraud**:  Defendants have violated 18 U.S.C. § 1343
24  by transmitting and receiving materials by wire for the purpose of executing
25  their scheme to defraud and obtain money on false pretenses,
26  misrepresentations, promises and/or omissions.  The materials transmitted
27  and/or received include, but are not limited to those mentioned herein,
28  including the telemarketing solicitations made by Defendants' telemarketers to

KNAPP,
PETERSEN
& CLARKE

-47-                    Complaint/Demand for Jury Trial

1462406.1  08000/00950

1 | Plaintiffs and Class members.

2          b.    **Mail Fraud**: Defendants have violated 18 U.S.C. § 1341
3 | by sending or receiving materials via U.S. mail or commercial interstate
4 | carriers for the purpose of executing their scheme to market and sell accidental
5 | death insurance policies to Nationwide Class members and California Subclass
6 | members by means of false pretenses, misrepresentations, promises and/or
7 | omissions. The materials include, but are not limited to the Written Smart-
8 | Step Materials, described herein, and other materials relating to the marketing
9 | and sale of Smart-Step.

10     235.   Many of the precise dates of Defendants' fraudulent uses of the U.S.
11 | mail and wire facilities have been deliberately hidden and cannot be alleged without
12 | access to the Defendants' books and records. Indeed, the success of Defendants'
13 | scheme depends upon secrecy, and Defendants have withheld details of the scheme
14 | from Plaintiffs and Class members. Generally, however, Plaintiffs can describe the
15 | occasions on which the predicate acts of wire and mail fraud would have occurred,
16 | and how those acts were in furtherance of the Smart-Step scheme. They include
17 | thousands of communications to perpetuate and maintain the scheme, including,
18 | among other things:

19          a.    Transmitting and receiving misleading marketing and sales
20 | materials about Defendants' accidental death insurance;

21          b.    Enrolling consumers in the Smart-Step;

22          c.    Transmitting the Written Smart-Step Materials to consumers;

23          d.    Processing premium payments from consumers;

24          e.    Paying and receiving commissions for the marketing and sale of
25 | accidental death insurance policies to consumers;

26          f.    Disseminating training materials for selling Smart-Step;

27     236.   The materials sent or received by Defendants via U.S. Mail, commercial
28 | carrier, wire or other interstate electronic media, contained, among other things:

KNAPP,
PETERSEN
& CLARKE

-48-     Complaint/Demand for Jury Trial

1          a.     Omissions concerning the key risks and features of Smart-Step;

2          b.     Omissions about Defendants' unlawful sales techniques and
3    misleading sales materials;

4          c.     Omissions about the nature of the relationship between the Sales
5    Agents and BANA, between IISI and the Sales Agents and between IISI and BANA;

6          d.     Omissions that Defendants' telemarketers are paid extremely high
7    commissions by IISI for selling Smart-Step.

8          237.   Defendants knowingly and intentionally made these misrepresentations,
9    acts of concealment and failures to disclose so as to deceive Plaintiffs and Class
10   members. Defendants either knew or recklessly disregarded that these were material
11   misrepresentations and omissions, and Plaintiffs and Class members relied on the
12   misrepresentations and Omissions as set forth herein.

13         238.   Defendants have obtained money and property belonging to Plaintiffs
14   and Class Members as a result of these statutory violations. Plaintiffs and Class
15   Members have been injured in their business or property by Defendants' overt acts of
16   mail and wire fraud, and by their aiding and abetting each other's acts of mail and
17   wire fraud.

18         239.   In violation of 18 U.S.C. §1962(d), Defendants conspired to violate 18
19   U.S.C. §1962(c), as described herein. Various other persons, firms and corporations,
20   not named as Defendants in this Complaint, have participated as co-conspirators with
21   Defendants in these offenses and have performed acts in furtherance of the
22   conspiracy.

23         240.   Each Defendant aided and abetted violations of the above laws, thereby
24   rendering them indictable as a principal in the 18 U.S.C. §§ 1341 and 1343 offenses
25   pursuant to 18 U.S.C. § 2.

26         241.   Plaintiffs and Class Members have been injured in their property by
27   reason of Defendants' violations of 18 U.S.C. § 1962(a) and (d), including lost
28   access to needed funds; unnecessary and concealed overdraft and over-limit fees,

KNAPP,
PETERSEN
& CLARKE

-49-          Complaint/Demand for Jury Trial

1462406.1 08000/00950

1  charges and penalties that they would not have otherwise incurred; accidental death
2  insurance that was effectively worthless. In the absence of Defendants' violations of
3  18 U.S.C. § 1962 (a) and (d), Plaintiffs and Class members would not have incurred
4  these costs and expenses, or they would have incurred less.

5      242.  Plaintiffs and the Class relied, to their detriment, on Defendants'
6  uniform and standardized fraudulent misrepresentations and omissions, which were
7  made by means of telemarketing solicitations and mailings. Plaintiffs' and the Class
8  Members' reliance is evidenced by their payments for Smart-Step.

9      243.  Plaintiffs' and the Class members' injuries were directly and
10  proximately caused by Defendants' racketeering activity.

11      244.  Defendants knew Plaintiffs and Class Members relied on Defendants'
12  misrepresentations and omissions about Smart-Step, including but not limited to
13  omissions regarding the negative option and free-to-pay features of the Smart-Step
14  offer. Defendants knew that policyholders would incur substantial costs as a result.

15      245.  Under the provisions of 18 U.S.C. §1964(c), Plaintiffs are entitled to
16  bring this action and to recover treble damages, the cost of bringing this suit and
17  reasonable attorneys' fees.

18      246.  Defendants are accordingly liable to Plaintiffs for three times their
19  actual damages as proved as trial plus interest and attorneys' fees.

20      247.  This claim arises under 18 U.S.C. §1962 (a, b, c & d), which provides in
21  pertinent part:

22          a.      It shall be unlawful for any person who has received any
23  income derived, directly or indirectly, from a pattern of racketeering activity
24  or through collection of an unlawful debt in which such person has
25  participated as a principal within the meaning of section 2, title 18, United
26  States Code, to use or invest, directly or indirectly, any part of such income, or
27  the proceeds of such income, in acquisition of any interest in, or the
28  establishment or operation of, any enterprise which is engaged in, or the

KNAPP,
PETERSEN
& CLARKE

1   activities of which affect, interstate or foreign commerce. . .

2              b.     It shall be unlawful for any person through a pattern of
3 racketeering activity or through collection of an unlawful debt to acquire or
4 maintain, directly or indirectly, any interest in or control of any enterprise
5 which is engaged in, or the activities of which affect, interstate or foreign
6 commerce.

7              c.     It shall be unlawful for any person employed by or
8 associated with any enterprise engaged in, or the activities of which affect,
9 interstate or foreign commerce, to conduct or participate, directly or indirectly,
10 in the conduct of such enterprise's affairs through a pattern of racketeering
11 activity or collection of unlawful debt.

12              d.     It shall be unlawful for any person to conspire to violate
13 any of the provisions of subsection (a), (b), or (c) of this section.

14                       **COUNT III**

15   **(Violations of Cal. Bus. & Prof. Code Section 17200, et seq. -- for Business Acts**
16                             **And Practices)**

17             **(On Behalf of Plaintiffs and the California Subclass)**

18      248.   Plaintiffs restate and re-allege the preceding paragraphs of this
19 Complaint as though set out here word for word.

20      249.   Section 17200 specifically prohibits any "**unlawful** . . . business act or
21 practice."

22      250.   Defendants' fraudulent concealment and violations of the EFTA, 15
23 U.S.C. § 1693e(a), 12 C.F.R. § 205.10(b); and the Racketeer Influenced and Corrupt
24 Organizations Act, 18 U.S.C. § 1962 (a, b, c & d) provides three independent
25 grounds for a finding of liability under the "unlawful" prong of Cal. Bus. & Prof.
26 Code § 17200, et seq.

27      251.   Defendants' uniform scheme as alleged herein also constitutes abusive
28 and deceptive telemarketing acts or practices in violation of the Federal Trade

KNAPP,
PETERSEN
& CLARKE

1462406.1  08000/00950

1  Commission's TSR, 16 C.F.R. §§ 310.3(a)(1)(ii) (failure to disclose all material
2  restrictions, limitations, or conditions to purchase or use the goods or services
3  offered), 310.3(a)(1)(iii) (failure to describe policy of not making refunds),
4  310.3(a)(1)(vii) (failure to describe all material terms and conditions of the negative
5  option feature), 310.4(a)(7) (causing billing information to be submitted for payment
6  with the consumer's express informed consent); 310.4(a)(7)(i)(A-C) (failing to
7  obtain from the consumer the last four (4) digits of the account number to be
8  charged, failure to obtain from the consumer his or her express agreement to be
9  charged using the account number provided by the consumer and failure to record
10 "the entire telemarketing transaction."). Defendants' uniform unlawful, unfair and
11 fraudulent conduct that constitutes violations of the TSR constitute additional
12 grounds for liability under the "unlawful" prong of the UCL.

13    252.  Pursuant to California Insurance Code Section 330, "[n]eglect to
14 communicate that which a party knows, and ought to communicate, is concealment."
15 California Insurance Code Section 332 requires that "[e]ach party to a contract of
16 insurance shall communicate to the other, in good faith, all facts within his
17 knowledge which are or which he believes to be material to the contract and as to
18 which he makes no warranty, and which the other has not the means of ascertaining."
19 The conduct alleged herein also constitutes violations of California Insurance Code
20 Sections 330 and 332, thereby providing additional grounds for liability under the
21 "unlawful" prong of the UCL.

22    253.  Pursuant to California Insurance Code Sections 32, 1622 and 1626, only
23 insurance agents licensed by the State of California may transact accidental death
24 insurance. Upon information and belief, Defendants violated California Insurance
25 Code Sections 32, 1622 and 1626 by permitting unlicensed telemarketing
26 representatives to transact Smart-Step to California consumers. Upon information
27 and belief, Defendants' unlicensed telemarketing representatives sold and transacted
28 Smart-Step and Defendants' licensed telemarketing representatives merely confirmed

KNAPP,
PETERSEN
& CLARKE

Complaint/Demand for Jury Trial

1462406.1  08000/00950

1 a prior unlawful sale. Defendants' violations of California Insurance Code Sections
2 32, 1622 and 1626 provide additional grounds for liability under the "unlawful"
3 prong of the UCL.

4     254. The offer of free insurance is directly violative of California Insurance
5 Code Section 777.1, which forbids the practice.

6     255. Plaintiffs and each Class member have been damaged as a result of
7 Defendants' unlawful conduct alleged herein. Defendants enrolled Plaintiffs and
8 Class members in Smart-Step without their informed, express consent and Plaintiffs
9 have each paid hundreds of dollars in unauthorized Smart-Step premiums. Plaintiffs
10 have, thus, suffered injury in fact and lost money or property as a result of
11 Defendants' conduct alleged herein. They are entitled to injunctive relief and
12 restitution, in an amount to be proven at trial.

13 **Count IV**

14 **(Violations of Cal. Bus. & Prof. Code Section 17200 -- for *Fraudulent* Business**
15 **Acts And Practices)**

16 **(On Behalf of Plaintiffs and the California Subclass)**

17     256. Plaintiffs restate and re-allege the preceding paragraphs of this
18 Complaint as though set out here word for word.

19     257. The conduct alleged herein constitutes **fraudulent** business acts and
20 practices in violation of Cal. Bus. & Prof. Code §§ 17200, et seq. because reasonable
21 members of the public are likely to be deceived by such practices.

22     258. A claim based on the "fraudulent" prong of Cal. Bus. & Prof. Code §§
23 17200, et seq. is distinct from common law fraud. Although a fraudulent deception
24 must be actually false, known to be false by the perpetrator and reasonably relied
25 upon by a victim who incurs damages, none of these elements are required to state a
26 claim under the "fraudulent" prong of the UCL.

27     259. Defendants violated the "fraudulent" prong of the UCL by engaging in
28 the following business acts and practices, among others alleged herein:

KNAPP,
PETERSEN
& CLARKE

1         a.     Failing to disclose during the telemarketing solicitation that

2 Defendants possessed the checking account and/or credit card account information of

3 Plaintiffs and Class members, and that their billing information could be submitted

4 for payment without obtaining the checking account and/or credit card account

5 information directly from Plaintiffs and Class members

6         b.     Omitting the fact and/or failing to disclose in a clear and

7 conspicuous manner during the telemarketing solicitation that customers had to

8 affirmatively decline enrollment in Smart-Step prior to the expiration of the 30-day

9 complimentary review period in order to avoid incurring recurring charges.

10        c.     Using convoluted, obfuscatory, complex language during the

11 telemarketing transaction to reference the free-to-pay negative option feature of the

12 Smart-Step Offer.

13        d.     Failing to disclose clearly and conspicuously the free-to-pay

14 negative option feature of the Smart-Step offer in the written Smart-Step materials

15 mailed to Plaintiffs and Class members.

16        e.     Failing to explain in the Written Smart-Step Materials mailed to

17 Plaintiffs and Class members that customers must affirmatively decline enrollment in

18 Smart-Step prior to the expiration of the 30-day complimentary review period in

19 order to avoid incurring ongoing charges by calling the plan administrator.

20        f.     Including on the cover letter with the written Smart-Step

21 materials the phrase "convenient billing" in bold font when Defendants never send

22 consumers a bill or invoice for Smart-Step.

23        g.     Concealing the only reference to the negative option feature of

24 the Smart-Step offer on the cover letter of the written Smart-Step materials in the

25 middle of a bullet-point paragraph, in small type-face that is difficult to read.

26        h.     Failing to request and/or obtain written authorization from

27 Plaintiffs and Class members to automatically debit their checking account and/or

28 credit card account; and

KNAPP,
PETERSEN
& CLARKE

-54-          Complaint/Demand for Jury Trial

1          i.   The failure to disclose material facts as set forth in Paragraph 56,
2    herein.

3          260.   Defendants' unfair, unlawful, and deceptive acts and practices alleged
4    herein have deceived Plaintiffs and the Class, and are likely to deceive other
5    reasonable consumers.

6          261.   Plaintiffs and Class members have been damaged as a result of
7    Defendants' fraudulent conduct alleged herein. Defendants enrolled Plaintiffs and
8    Class members in Smart-Step without their informed, express consent and Plaintiffs
9    have each paid hundreds of dollars in unauthorized Smart-Step premiums. Plaintiffs
10   have, thus, suffered injury in fact and lost money or property as a result of
11   Defendants' conduct alleged herein. They are entitled to injunctive relief and
12   restitution, in an amount to be proven at trial.

13                                    **Count V**

14   **(Violations of Cal. Bus. & Prof. Code Section 17200, et seq. -- *Unfair* Business**
15                              **Acts And Practices)**

16            **(On Behalf of Plaintiffs and the California Subclass)**

17         262.   Plaintiffs restate and re-allege the preceding paragraphs of this
18   Complaint as though set out here word for word.

19         263.   The conduct alleged herein constitutes **unfair** business acts and
20   practices in violation of Cal. Bus. & Prof. Code §§ 17200, et seq. because it offends
21   established public policy protecting consumers from deceptive practices and/or is
22   immoral, unethical, oppressive, unscrupulous, and/or substantially injurious to
23   customers. Further, any justifications for Defendants' wrongful conduct are
24   outweighed by the adverse effects of such conduct.

25         264.   Additionally, Defendants' conduct as alleged herein offends the
26   numerous public policies protecting consumers from deceptive practices established
27   by the Electronic Funds Transfer Act, 15 U.S.C. § 1693e(a) 12 C.F.R. § 205.10(b);
28   the FTC's Telemarketing Sales Rule, 16 C.F.R. Part 310; the Racketeer Influenced

KNAPP,
PETERSEN
& CLARKE

-55-                    Complaint/Demand for Jury Trial

1462406.1  08000/00950

1   and Corrupt Organizations Act, 18 U.S.C. § 1962 (a, b, c & d); and Cal. Insur. Code
2   §§ 32, 330, 332, 1622, 1626 and 777.1. Defendants' conduct as alleged herein is
3   unfair under California law even if it does not constitute a violation of the federal and
4   California statutes identified in this Paragraph, although Defendants' conduct also
5   constitutes violations of those federal and California statutes.

6       265.   Plaintiffs and Class members have been damaged as a result of
7   Defendants' unfair conduct alleged herein. Defendants enrolled Plaintiffs and Class
8   members in Smart-Step without their informed and express consent and Plaintiffs
9   have each paid hundreds of dollars in unauthorized Smart-Step premiums. Plaintiffs
10  have, thus, suffered injury in fact and lost money or property as a result of
11  Defendants' conduct alleged herein. They are entitled to injunctive relief and
12  restitution, in an amount to be proven at trial.

13                          **PRAYER FOR RELIEF**

14      **WHEREFORE**, Plaintiffs pray:

15      1.     That the Court determines that this action may be maintained as a class
16  action under Rule 23 of the Federal Rules of Civil Procedure, that the Plaintiffs are
17  proper class representatives, and their counsel are adequate class counsel;

18      2.     That judgment be entered against Defendants and in favor of Plaintiffs
19  and the Class on the Claims for Relief in this Complaint, for injunctive and equitable
20  relief as requested above, and for actual, compensatory and punitive damages in an
21  amount to be determined at trial;

22      3.     That judgment be entered imposing interest on damages, litigation costs
23  and attorneys' fees against Defendants; and

24  ////
25  ////
26  ////
27  ////
28  ////

KNAPP,
PETERSEN
& CLARKE

-56-                     Complaint/Demand for Jury Trial

1    4.    For all other and further relief as this Court may deem necessary and

2    appropriate.

3

4    Dated: May 10, 2012                     KNAPP, PETERSEN & CLARKE

5

6

7                                    By: _____

8                                         André E. Jardini
                                          K.L. Myles
                                          Attorneys for Plaintiffs STARLA
9                                         PACINI, an individual; MARIA
                                          SANCHEZ, an individual; ALBA
10                                        PENAGOS, an individual; and
                                          HECTOR PENAGOS, an
11                                        individual; appearing individually
                                          and on behalf of others similarly
12                                        situated

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**KNAPP,
PETERSEN
& CLARKE**

-57-                          Complaint/Demand for Jury Trial

1

**DEMAND for JURY TRIAL**

2     Plaintiffs demand a trial by jury on all issues so triable.

3

4   Dated: May 10, 2012                    KNAPP, PETERSEN & CLARKE

5

6

7                                   By: _____

8                                       André E. Jardini
                                        K.L. Myles
9                                       Attorneys for Plaintiffs STARLA
                                        PACINI, an individual; MARIA
10                                      SANCHEZ, an individual; and
                                        ALBA PENAGOS, an individual;
11                                      appearing individually and on behalf
                                        of others similarly situated

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

KNAPP,
PETERSEN
& CLARKE

Complaint/Demand for Jury Trial

1462406.1  08000/00950